John HANNON, Plaintiff,

v.

WATERMAN STEAMSHIP CORPORATION, et al., Defendants.

Civ. A. Nos. 80–1175, 80–1251(G), 80–1953(K), 80–2290(H), 80–2659(K), 80–2678(C), 80–2679(M), 80–2681(K), 80–3278(E), 80–5106(C) and 82–33(A).

United States District Court,
E.D. Louisiana,
Section "E".

May 25, 1983.

Martzell, Montero & Lamothe, John R. Martzell, New Orleans, La., for plaintiff.

Montgomery, Barnett, Brown & Read, John P. Hammond and James B. Irwin, New Orleans, La., for Raybestos-Manhattan, Inc.

Felix R. Weill, Watson, Blanche, Wilson & Posner, Baton Rouge, La., for Nicolet Industries.

Lemle, Kelleher, Kohlmeyer & Matthews, Allen R. Fontenot, New Orleans, La., for Owens Corning Fiberglas Corp.

McGlinchey, Stafford & Mintz, J. Michael Johnson, New Orleans, La., for Combustion Engineering Inc.

Landry, Watkins & Bonin, Jacob D. Landry, James O. Salley, New Iberia, La., for The Flintkote Co.

Jones, Walker, Waechter, Poitevent, Carrere & Denegre, John J. Weigel, New Orleans, La., for Johns-Manville Corp.

Woodley, Barnett, Cox, Williams & Fenet, James E. Williams, Lake Charles, La., for Eagle-Picher Industries, Inc.

Christovich & Kearney, W.K. Christovich, New Orleans, La., for Armstrong Cork Co.

William V. Renaudin, Jr., New Orleans, La., for J.P. Stevens & Co., Inc.

Adams & Reese, Robert A. Vosbein, New Orleans, La., for Forty Eight Insulation Corp.

Borrello & Huber, Stephen L. Huber, Metairie, La., for Claremont, Inc.

Porteous, Toledano, Hainkel & Johnson, James S. Thompson, New Orleans, La., for Pittsburgh Corning Corp.

Seale, Smith & Phelps, William C. Kaufman, III, Baton Rouge, La., for Fibreboard Corp.

Rene A. Pastorek, Thomas L. Gaudry, Jr., Daniel A. Ranson, Gretna, La., for Celotex Corp.

Lemle, Kelleher, Kohlmeyer & Matthews, Paul B. Deal, Jerald L. Album, New Orleans, La., for Sepco Corp.

Onebane, Donohoe, Bernard, Torian, Diaz, McNamara & Abell, John G. Torian, II, Frank X. Neuner, Jr., Lafayette, La., for Keene Corp., Keene Building Products Corp., Baldwin Ehret-Hill Co.

Bienvenu, Foster, Ryan & O'Bannon, Robert N. Ryan, William L. Brockman, New Orleans, La., for GAF Corp.

Deutsch, Kerrigan & Stiles, Robert E. Kerrigan, Jerry T. Sewell, New Orleans, La., for Southern Asbestos Co., H.K. Porter Co., Inc.

Beard, Blue, Schmitt, Mathes, Koch & Williams, C.T. Williams, New Orleans, La., for AC & S, Inc.

Phelps, Dunbar, Marks, Claverie & Sims, Richard N. Dicharry, Thomas J. Wagner, New Orleans, La., for Waterman S.S. Corp.

## MEMORANDUM OPINION FOR SUMMARY JUDGMENT

CASSIBRY, District Judge:

In these asbestosis cases a number of the defendant manufacturers have filed motions for summary judgment on the ground that certain plaintiffs have been unable to identify any asbestos products manufactured by certain defendants. Defendant shipowners have filed oppositions to these motions and, in addition, the plaintiffs filed a memoranda urging application of a theory of collective liability. On May 11, 1983, the Court heard argument from both sides on the proposed application of a theory of collective liability. Having considered both sides' memoranda and arguments on the use of a collective theory of liability, the Court now DENIES the plaintiffs' suggested use of the theory, as discussed below.

A question of terminology, however, must precede the Court's discussion. In the beginning, there were the theories of alternative liability and concert of action. Then came the concept of industry-wide liability. And, most recently, in *Sindell v. Abbott Laboratories, et al.*, 26 Cal.3d 588, 163 Cal. Rptr. 132, 607 P.2d 924 (1980), cert. denied, 449 U.S. 912, 101 S.Ct. 285, 66 L.Ed.2d 140 (1980), the California Supreme Court created the market share theory of liability.[1]

Plaintiffs have fashioned a fifth term: collective liability, which they contend is "merely a refinement of the already exist-

1. For a fairly comprehensive discussion of the three previously mentioned theories, as well as market share theory, and the requisite conditions for the application of each, see *Sindell*, 607 P.2d at 928–38, 163 Cal.Rptr. at 136–146.

Describing the theory of market share liability is much easier than defining it:

... Under this doctrine, the traditional prerequisite of identifying the manufacturer of the injury-causing product is eliminated when the product is a generic item produced by several manufacturers. In such cases, plaintiffs need only allege inability to identify the actual manufacturer and join as defendants those manufacturers that compose a "substantial share" of the market. Plaintiffs then proceed with their case against those members of the industry that are named as defendants. This theory shifts the burden of proof to each manufacturer to prove its innocence...

If, after proceeding against the industry in this manner, plaintiff successfully establishes liability, damages are simply apportioned among defendants on the basis of each defendant's share of the product market. The resultant market share liability imposed thus "approximate[s each manufacturer's] responsibility for the injuries caused by its own products." A defendant can avoid liability only by proving that it did not produce the specific product that harmed the plaintiff. Note, "Market Share Liability for Defective Products: An Ill-Advised Remedy for the Problem of Identification", 76 Nw.U.L.Rev. 300, 301–2 (1981) (footnotes omitted).

ing doctrines." [2]  I have concluded, however, that the term as suggested is rather more confusing than refining and, for what is intended to be clarification rather than semantic nitpicking, have decided to use the term "market share theory" in discussing this issue.

The reasons for this are twofold. First, as the manufacturers' brief demonstrates (and as the plaintiffs essentially, if tacitly, concede), the facts of these asbestosis cases make them inappropriate ones in which to apply the theories of alternative liability, concert of action, or industry-wide liability. Second, having discarded that trio, I have also determined that plaintiffs are urging nothing more or less than a market share theory of liability [3] and, that being the case, "collective liability" adds nothing but another vague phrase to what is already a relatively imprecise area of the law. In this situation, one name is better than two.

*Market Share and Asbestos*

Turning now to the issue of market share theory's application to the present litigation, I have concluded that such an application would be improper. To begin with, the reasons offered in *In Re Related Asbestos Cases,* 543 F.Supp. 1152 (N.D.Cal.1982), which denied a similar application by plaintiffs, seem inarguably correct. Put simply, an asbestosis case is not a DES case, for asbestos is not like DES:

**2.** Plaintiffs' Memorandum in Opposition to Defendant Manufacturers' Motions for Summary Judgment Urging Application of a Theory of Collective Liability, p. 8.

**3.** Without going into exhaustive detail, this determination was based on the following:

1. Plaintiffs' brief is, at bottom, an effort to analogize asbestos to DES and, thus, to suggest the rationale of *Sindell* should apply.

2. The cases cited by plaintiffs in primary support of the theory of "collective liability", e.g. *Hardy v. Johns-Manville Sales Corp.,* 509 F.Supp. 1353 (E.D.Tex.1981), rev'd on other grounds, 681 F.2d 334 (5th Cir.1982); *Burke v. Johns-Manville Corp.,* No. C–1–81–289 (S.D. Ohio 1981), have discussed the issue largely in terms of *Sindell.*

3. Plaintiffs have suggested no new theoretical emendation, revision, or wrinkle which might serve to differentiate collective liability from market share theory.

For example, unlike DES, which is a fungible commodity, asbestos fibers are of several varieties, each used in varying quantities by defendants in their products, and each differing in its harmful effects. Second, defining the relevant product and geographic markets would be an extremely complex task due to the numerous uses to which asbestos is put, and to the fact that some of the products to which the plaintiffs were exposed were undoubtedly purchased out of state sometime prior to the plaintiffs' exposure. A third factor contributing to the difficulty in calculating market shares is the fact that some plaintiffs were exposed to asbestos over a period of many years, during which time some defendants began or discontinued making asbestos products. Id. at 1158.

A fourth practical difficulty with market share theory in this context would be the prominent absence from the calculation of Johns-Manville, which is, according to the manufacturers' brief, the largest asbestos manufacturer in the United States. In *Sindell,* one trigger for the use of market share was the "presence in the action of a substantial share of the appropriate market". 163 Cal.Rptr. at 145, 607 P.2d at 937. While "substantiality" is in the eyes of the beholder, one of its desirable elements would generally be the main actor in the marketplace.[4]

At oral argument, plaintiffs' counsel put forth the notion that plaintiffs were asking for something "less" than a market share theory of liability, in that they were merely seeking to place the burden on the defendant manufacturers to show that they did not cause a plaintiff's injuries. Unfortunately, this notion begged the central question: Under what theory of liability should a court shift the burden of proof to the defendants? In the context of asbestos litigation, the one possible answer to this question seems to be market share theory.

**4.** Of course, this statement assumes that the leading manufacturer's share is itself "substantial" with respect to the market as a whole. That is, if Company A were the largest manufacturer, but its share of the market only, say, two per cent, then its presence might not be particularly necessary.

Finally, as noted in *In Re Related Asbestos Cases,*

Perhaps more important than the practical difficulty in ascertaining shares here is the fact that, unlike the plaintiff in *Sindell,* who was completely unable to identify which defendant had manufactured the product which her mother had ingested, plaintiffs in the present case apparently plan to call as witnesses individuals who will testify that plaintiffs were exposed to asbestos products manufactured by defendants. Where a plaintiff does have information as to the identity of the defendants who caused his alleged injury, the rationale for shifting the burden of proof in *Sindell* is simply not present. *See generally, Prelick v. Johns-Manville Corporation,* 531 F.Supp. 96 (W.D.Penn.1982); *Starling v. Seaboard Coast Line Railroad Co.,* 533 F.Supp. 183 (S.D.Ga.1982).

For these reasons, I have concluded that asbestosis litigation is an inappropriate context in which to extend the market share theory of liability.