Bobbie Edwin CASE and Eva Case, Plaintiffs/Appellants,

v.

FIBREBOARD CORPORATION; Johns-Manville Sales Corporation; Owens-Corning Fiberglass Corp.; Eagle-Picher Industries, Inc.; Pittsburgh-Corning Corporation; Celotex Corporation; GAF Corporation; Armstrong Cork Company; Standard Asbestos Manufacturing and Insulating Company; Nicolet Industries, Inc.; Keene Corporation; Combustion Engineering, Inc.; Forty-Eight Insulation, Inc.; Ryder Industries, Inc.; Owens-Illinois, Inc.; Raymark Industries, Inc.; Flintkote Company; Rock Wool Manufacturing Company; H.B. Fuller Company; Unarco Industries, Inc.; H.K. Porter Company; and National Gypsum Company, Defendants/Appellees.

No. 67749.

Supreme Court of Oklahoma.

Sept. 22, 1987.

Ungerman, Conner & Little by Mark H. Iola, Tulsa, for plaintiffs/appellants.

Abowitz & Welch by Mort G. Welch and Murray E. Abowitz, Oklahoma City, for defendants/appellees Fibreboard Corp., Owens-Corning Fiberglass, Eagle-Picher Industries, Inc., Pittsburgh-Corning Corp., Celotex Corp., GAF Corp., Owens-Illinois, Inc., Flintkote Co., Rock Wool Manufacturing Co., H.K. Porter Co., and National Gypsum Co.

Sanders & Carpenter by Philip McGowan, Tulsa, for defendant/appellee Nicolet Industries, Inc.

Feldman, Hall, Franden, Woodward & Farris by William S. Hall, Tulsa, for defendant/appellee Combustion Engineering, Inc.

Jones, Givens, Gotcher, Bogan & Hilborne, P.C. by Alfred K. Morlan and Joan Godlove, Tulsa, for defendant/appellee Raymark Industries, Inc.

Barkley, Rodolf, White & Hartman by Mike Barkley and Andrew S. Hartman, Tulsa, for defendant/appellee H.B. Fuller Co.

LAVENDER, Justice:

The United States Court of Appeals for the Tenth Circuit has certified a question of law to this Court pursuant to the Uniform Certification of Questions of Law Act.[1] The question asks:

"In an action brought under a theory of manufacturer's products liability in which precise identification of the tortfeasors cannot be verified, does Oklahoma recognize a form of collective liability as an alternative theory of relief when the plaintiff's alleged injury arises from the ingestion of asbestos fibers?"

The facts certified by the federal court in connection with the question posed are:

In a diversity action brought under Oklahoma's manufacturer's products liability law and filed in the United States District Court for the Northern District of Oklahoma, Bobbie and Eva Case alleged from the years 1949 through the present, Mr. Case was employed as a sheet metal worker in various locations in the State of Oklahoma. In that capacity, it is alleged Mr. Case was exposed to asbestos containing products manufactured, distributed, and sold by the defendants. Mr. Case claims that as a result of ingesting asbestos dust fibers and other elements of these products, he suffered severe, permanent, and disabling injuries. Mr. Case claimed that the defendants' products were unreasonably dangerous.

Discovery initiated by the defendants disclosed that Mr. Case was incapable of identifying either the precise products to which he had been exposed or the precise manufacturers of those products. It is contended that the inability to make the identifications is not due to any negligence on the part of Mr. Case, but rather to the fact that because of the nature of his employment, he had no knowledge of the asbestos containing products used at the jobsites at which he had worked. Thus, while the defendants have a connection to the production, distribution, and sale of products containing asbestos, Mr. Case cannot connect any of them specifically to the products to which he has been exposed.

The plaintiffs contended they could maintain the action because of the unique nature of the injury causing agent and the illness it produces. Plaintiffs argued that under the circumstances of this case, Oklahoma would recog-

1. 20 O.S.1981 §§ 1601 through 1612.

nize a theory of collective liability in which the defendants would share responsibility for plaintiffs' damages upon the basis of each defendant's share of the market for asbestos products manufactured, distributed, or sold in Oklahoma.

Because of the failure to tie any of the named defendants to any specific product containing asbestos to which plaintiff Case was exposed, the federal district court granted summary judgment to each of the defendants and plaintiffs appealed. The federal appellate court has in turn sought the guidance of this Court on the assertion by plaintiffs that Oklahoma law would grant relief even though plaintiffs could not identify the individual tort-feasors.

In the present action plaintiffs have named as defendants twenty-two out of more than three hundred companies that have manufactured and marketed asbestos and asbestos-containing products.[2] Plaintiffs, in their briefs to this Court have suggested that their action is maintainable, though they have joined less than all possible tort-feasors and can identify none as a definite source of injury, on the basis that all manufacturers and marketers of asbestos should stand collectively liable for any injury occurring as a result of asbestos exposure. Plaintiffs further argue that any named defendant who cannot affirmatively prove that its products could not have been a possible source of their injury should stand jointly and severally liable for plaintiff's damages.

The genesis of plaintiffs' argument lies in the case of *Sindell v. Abbott Laboratories*.[3] In *Sindell* the California Supreme Court recognized a theory of liability based on the market share held by a manufacturer of a specific harmful substance. The court based its decision on the facts that DES,[4] although manufactured by some 200 companies,[5] was manufactured by each under an identical formula and was dispensed generically. The court thus held that the companies providing DES to the market which served the plaintiff in *Sindell* at the time the plaintiff's mother took the drug causing the plaintiff's injuries stood a chance of having caused her injuries proportional to its share of the market. The court also held that the liability for plaintiff's damages should be apportioned along the same proportional lines.

Although the market share theory of liability adopted in *Sindell* has been advanced as a basis of possible liability in asbestos related lawsuits where a plaintiff could not name the manufacturers of the products he was exposed to, it has been met with consistent disapproval.[6] Those cases cited by plaintiffs in which the market share theory of liability has apparently been adopted to dispense with the necessity of proving a link of causation between injury and a particular defendant's product have either been subsequently reversed,[7] or are cases from intermediate or trial courts reported unofficially.[8]

**2.** See *Special Project, An Analysis of the Legal, Social and Political Issues Raised by Asbestos Litigation,* 36 Vand.L.Rev. 573 (1983), at 613 n. 216. (Hereinafter cited as *Special Project.*)

**3.** 26 Cal.3d 588, 163 Cal.Rptr. 132, 607 P.2d 924 (1980), cert. den. 449 U.S. 912, 101 S.Ct. 285, 66 L.Ed.2d 140.

**4.** Diethylstilbesterol, a drug which is a synthetic compound of the female hormone estrogen, and which was found to cause cancerous vaginal and cervical growths in females exposed to the drug prenatally. Id., 163 Cal.Rptr. at 133, 607 P.2d at 925.

**5.** Id., 163 Cal.Rptr. at 143, 607 P.2d at 935.

**6.** See *Thompson v. Johns-Manville Sales Corp.,* 714 F.2d 581 (5th Cir.1983) cert. den. 465 U.S. 1102, 104 S.Ct. 1598, 80 L.Ed.2d 129; *Hannon v.*

*Waterman Steamship Corp.,* 567 F.Supp. 90 (E.D.La.1983); *Prelick v. Johns-Manville Corp.,* 531 F.Supp. 96 (W.D.Pa.1982); *Starling v. Seaboard Coast Line R.R.,* 533 F.Supp. 183 (S.D.Ga. 1982); *In re Related Asbestos Cases,* 543 F.Supp. 1152 (N.D.Ca.1982); *Celotex Corp. v. Copeland,* 471 So.2d 533 (Fla.1985). And see *Blackston v. Shook and Fletcher Insulation Co.,* 764 F.2d 1480 (11th Cir.1985).

**7.** *Hardy v. Johns-Manville Sales Corp.,* 509 F.Supp. 1353 (E.D.Tex.1981), reversed 681 F.2d 334 (5th Cir.1982); *Copeland v. Celotex Corp.,* 447 So.2d 908 (Fla.Ct.App.1984), reversed 471 So.2d 533 (Fla.1985).

**8.** *Menne v. Celotex,* 3 Oct. 1986, *Asbestos Lit. Rep.* 13389 (U.S.D.C.Ks.); *Goldman v. Johns-Manville Corp.,* 1 Aug. 1986, *Asbestos Lit.Rep.* 12954 (Ohio Ct.App.); *Altenburg v. Johns-Man-*

Plaintiffs maintain that those cases which have disapproved the market share theory of liability in the context of asbestos related injuries are distinguishable from the present case on the basis that each involved not only unidentified tort-feasors but also identified tort-feasors. In those cases the market share liability theory was found inapplicable to keep the unidentified tort-feasors in the action. Plaintiffs maintain that it was the presence of the identified tort-feasors upon which those courts rested their decisions, and contrast that situation with the present where plaintiffs maintain they can identify *no* individual tort-feasor. Thus plaintiffs argue that pure policy reasons should allow them to maintain their action against the named defendants under a theory of collective liability, since no defendants would otherwise remain in the case.

Although the cases disapproving the application of market share liability to the asbestos litigation field did, with varying degrees of emphasis, cite the presence of identified tort-feasors as a reason for not applying market share theory, they also acknowledged other factors distinguishing asbestos litigation from the factual situation in which *Sindell* was decided.[9] It is of major importance that *Sindell* was decided in the context of a product that was truly fungible. DES was produced from a single formula and produced injury when used in a singular context; i.e. when given to pregnant women. Asbestos, on the other hand, is a name applied to a family of minerals, each member of which carries a different degree of risk:[10]

The asbestos family consists of more than 30 different minerals of fibrous structure. The minerals' physical properties vary so that only six varieties are of substantial economic value. These six minerals are chrysotile, crocidolite, amosite, anthophyllite, tremolite, and actinolite. Chrysotile, known for its silky white color, its durability, and its flexibility, is

the most widely used asbestos fiber. Manufacturers use it in the production of asbestos textiles, cement products, friction materials, insulation, and paper products. It is the least dangerous of the economically useful fibers. Crocidolite, a harsher, blue fiber, is used in pipes, cement products, textiles, and felts for plastics. Crocidolite, which is resistant to acids and alkalides, is more difficult to process than many of the other fibers and is the most dangerous of the asbestos fibers. Amosite is a harsh, brown fiber. It is extremely heat resistant, and manufacturers use it in cement, pipes, refractory tiles, and plastic reinforcement. It is a moderately dangerous fiber. Anthophyllite is used in cement production and the chemical industry. Tremolite is used for talc filters and in the chemical industry. Actinolite usually is not used commercially. (Citation omitted)

Compounding the variables arising from the presence of different minerals with different risk factors is the fact that asbestos is present in more than three thousand products commonly found in the home and work environments:[11]

Primary uses of asbestos include floor tile; gaskets and packing; friction products; paints; coatings; sealants; plastics; asbestos-cement pipe; asbestos textiles; asbestos paper; and asbestos-cement sheet.

Secondary uses of asbestos include flooring; valve, flange, and pump sealants; clutch, transmission, and brake components; industrial friction materials; automobile coatings; roof coating and patch; electric motor components; piping; conduits for electric wires; packaging components; gasket components; heat and fireproof clothing; insulation for wiring; theater curtains; fireproof drapery; table pads and heat protective mats; molten glass handling equipment; insulation products; filters for beverag-

---

*ville Corp.,* 3 Jan. 1986, Asbestos Lit. Rep. 11452 (Wash.Super.Ct.).

**9.** See cases cited at footnote 6.

**10.** *Special Report,* supra note 2, at 578 footnote 1.

**11.** *Special Report,* supra note 2, at 578.

es; appliance insulation; hood vents for corrosive materials; electric switchboards; miscellaneous building materials; appliance components; and cooling tower components.

Consumer uses include piping; decorative building panels; plaster and stucco; molded plastics; acoustical products; asphalt paving; caulking; motor armatures; paints; welding materials; drip cloths; fire doors; car components; oven and stove insulation; siding; shingles; floor tiles; chemical tanks; fire hoses; garments; gloves; filter media; boiler insulation; furniture; motion picture screens; roofing; rugs; wallboard; acoustical ceiling materials; insulation; electrical switches; hair dryers; clothes dryers; toasters; humidifiers; and toothbrushes. (citations omitted)

Thus the degree of risk arising from exposure to asbestos may differ not only depending on the form of the mineral encountered but on the form of the product in which it is encountered.[12]

Because the market share liability theory is a theory which eliminates proof of causation of injury *for public policy reasons,*[13] it must also be clearly founded in facts which support the link between the injury suffered and the risk to which the plaintiff was exposed. In the DES arena this cause and effect connection was clear cut. In the application to asbestos related injuries there are more complications:[14]

Before addressing the issue of which exposure caused the plaintiff's injury, a court must make a more fundamental determination: did asbestos cause the plaintiff's disease? This determination comprises both the medical causation and the causation in fact issues: (1) is asbestos a competent producing cause of the disease suffered by the plaintiff; and (2) are any other substances competent producing causes of the plaintiff's disease, and are they in fact the cause of the plaintiff's injury? This issue frequently

surfaces in asbestos product litigation because the most common plaintiff's diseases—asbestosis, mesothelioma, and lung cancer—may be caused by exposure to substances other than asbestos. Lung cancer is a common disease resulting from exposure to a variety of carcinogens including chromates, nickel, coke oven emissions, cigarette smoke, uranium, arsenic, auto emissions, and other pollutants. Likewise, medical research indicates that the inhalation of numerous other types of fibrous substances may trigger mesothelioma or cause scarring of the lung tissue identical to the symptoms of asbestosis. (citations omitted)

In the *Sindell* case, and those following it, it was determined that public policy considerations supporting recovery in favor of an innocent plaintiff against negligent defendants would allow the application of a theory of liability which shifted the burden of proof of causation from plaintiff to defendants. However, as previously stated, that theory was crafted in a situation where each potential defendant shared responsibility for producing a product which carried with it a singular risk factor. The theory further provided that each potential defendant's liability would be proportional to that defendant's contribution of risk to the market in which the plaintiff was injured. This situation thus provided a balance between the rights of the defendants and the rights of the plaintiffs. A balance being achieved, public policy considerations were sufficient to justify the application of the market share theory of liability.

In the asbestos related injury area however, as we have seen, the problem of balancing the contributions of each manufacturer to the risk of injury to a particular plaintiff are incalculably difficult when that plaintiff cannot furnish identification of a known tort-feasor. Unlike the DES cases, the injury does not arise at a specific time which can be related to a known ingestion of a dangerous substance. Asbes-

**12.** *Celotex Corporation v. Copeland,* 471 So.2d at 538.

**13.** *Starling v. Seaboard Coast Line R.R.,* 533 F.Supp. at 187.

**14.** *Special Report,* supra note 2, at 609, footnote 190.

tos products retain their hazardous characteristics throughout their use and injury may occur from any exposure. This is illustrated by facts alleged in this case in which plaintiffs relate that injury may have occurred not from the installation of new materials, which might be identifiable as to manufacture, but from the ripping-out of old materials, installed at unknown dates.

Although plaintiffs in asbestos related injury cases may not be able in all cases to identify potential defendants, the public policy favoring recovery on the part of an innocent plaintiff does not justify the abrogation of the rights of a potential defendant to have a causative link proven between that defendant's specific tortious acts and the plaintiff's injuries where there is a lack of circumstances which would insure that there was a significant probability that those acts were related to the injury. We therefore would not recognize the applicability of a market share theory of liability to asbestos injury litigation under Oklahoma law. Such an application would impose on the individual members of the asbestos industry a program of compensation for injuries potentially caused by any member of the industry devoid of considerations of actual causation by the individual named as defendant. The creation of a program of compensation for victims of asbestos related injuries *as a matter of policy* is a matter for the legislative body and not for the courts.

As we find market share theory of liability inapplicable under the facts presented to us in conjunction with the present question, we also find the various other theories of collective liability referred to us by plaintiffs to be inapplicable to forge a theory under which they might recover. The applicability of alternative liability theory, concert of action theory and enterprise liability theory were all considered in connection with the DES cases and rejected as inapplicable.[15] The factors which rendered these theories inapplicable in the field of DES litigation are clearly present in the

area of asbestos litigation and also render the theories inapplicable.

Our answer to the United States Court of Appeals for the Tenth Circuit is that Oklahoma would not recognize a form of collective liability as a theory of relief in an asbestos related injury litigation where the plaintiff is unable to identify specific tortfeasors.

All the Justices concur.

---

**15.** *Sindell v. Abbott Laboratories,* supra note 3; *Martin v. Abbott Laboratories,* 102 Wash.2d 581, 689 P.2d 368 (1984).