LAURIE LENG, Adm'r of the Estate of Julian Leng, Deceased, Plaintiff-Appellant, v. THE CELOTEX CORPORATION *et al.*, Defendants-Appellees.

First District (6th Division)   No. 1—89—1864

Opinion filed March 30, 1990.

Cooney & Conway, of Chicago (William R. Fahey, James R. Hopkinson, and Kathy Byrne, of counsel), for appellant.

Kelley, Drye & Warren and Schiff Hardin & Waite, both of Chicago, and Heyl, Royster, Voelker & Allen, P.C., of Peoria (John Dames, Eric Quandt, Peter Carlson, Carolyn Quinn, Karen Kendall, David Sinn, Christopher Larson, and Robert Riley, of counsel), for appellees.

JUSTICE McNAMARA delivered the opinion of the court:

Plaintiff, Laurie Leng, administrator of the estate of Julian Leng, deceased, appeals from an order dismissing certain counts as to defendants Celotex Corporation, A & M Insulation Company, Owens-Corning Fiberglas Corporation, Owens-Illinois, Inc., Fibreboard Corporation, Pittsburgh Corning Corporation, Armstrong World Industries, Inc., Keene Building Products Corporation, Keene Corporation, GAF Corporation, and T & N, PLC. The sole issue on appeal is whether Illinois should adopt the modified market share liability theory in asbestos cases where the manufacturers of the asbestos products cannot be identified by plaintiff. The trial court dismissed counts V through VIII, which asserted a market share theory of liability, and found the order final and appealable pursuant to Supreme Court Rule 304(a) (107 Ill. 2d R. 304(a)). The four remaining counts, which are still pending in the trial court, alleged negligence and strict liability.

On February 27, 1987, the 34-year-old decedent died of mesothelioma, a form of cancer which occurs almost always as a result of exposure of asbestos fibers. Decedent worked as an industrial welder at

several companies in Illinois, including Chrysler Motors and Sundstrand Corporation, between 1973 and 1987. He installed and removed asbestos-containing products, including insulation materials, gaskets, cement and block, allegedly manufactured, sold, distributed and installed by defendants.

Plaintiff, decedent's wife, brought this action on February 9, 1989. Co-workers of decedent have not been able to identify brand names of the products at issue. Using information and histories gathered in other cases, plaintiff selected as defendants the 20 manufacturers of asbestos-containing products most likely to have been used at Chrysler and Sundstrand during the relevant time period.

Counts V, VI, VII and VIII of the complaint alleged a market share theory of liability against defendants. Several defendants filed motions to dismiss the market share counts on the ground that the theory is not recognized in Illinois. On June 29, 1989, the court granted the motion to dismiss, pursuant to section 2—615 of the Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 2—615).

█ In a products liability action, plaintiff must establish that the injury complained of resulted from a condition of the product, that the condition was unreasonably dangerous, and that the condition existed when the product left the manufacturer's control. (*Nadan v. Celotex Corp.* (1989), 190 Ill. App. 3d 410, 546 N.E.2d 766.) Plaintiff must establish a reasonable connection between the injury, the product causing the injury, and the manufacturer of that product, thus requiring that plaintiff identify the particular manufacturer of the product. (*Zimmer v. Celotex Corp.* (1989), 192 Ill. App. 3d 1088, 549 N.E.2d 881.) While these elements may be proved by direct or circumstantial evidence, liability cannot be based on speculation, guess or conjecture. *Naden v. Celotex Corp.*, 190 Ill. App. 3d 410, 546 N.E.2d 766.

█ In the present case, plaintiff has presented nothing which justifies an inference that decedent was exposed to defendants' products. She concedes that she cannot identify the manufacturers who produced the asbestos-containing products to which decedent was exposed. The mere possibility of such exposure is insufficient to withstand defendants' motion to dismiss.

Plaintiff, however, relies on *Smith v. Eli Lilly & Co.* (1988), 173 Ill. App. 3d 1, 527 N.E.2d 333, *appeal allowed* (1988), 123 Ill. 2d 567, 535 N.E.2d 411, where this court adopted the modified market share liability theory in a products liability case. That case involved the drug diethylstilbestrol (DES) and was brought by a woman who suffered from cancer as the result of her mother having ingested

DES while she was pregnant with plaintiff. Plaintiff could not identify the manufacturer of the DES, but was permitted to bring suit against more than 100 companies which had potentially made the DES her mother had ingested.

The overwhelming majority of courts which have addressed the precise issue before us have held that the market share liability theory cannot be used in asbestos cases. See, *e.g., Menne v. Celotex Corp.* (10th Cir. 1988), 861 F.2d 1453, 1468 n.24; *Vigiolto v. Johns-Manville Corp.* (3d Cir. 1987), 826 F.2d 1058, *aff'g* (W.D. Pa. 1986), 643 F. Supp. 1454; *Bateman v. Johns-Manville Sales Corp.* (5th Cir. 1986), 781 F.2d 1132 (applying Louisiana law); *Blackston v. Shook & Fletcher Insulation Co.* (11th Cir. 1985), 764 F.2d 1480 (applying Georgia law); *Thompson v. Johns-Manville Sales Corp.* (5th Cir. 1983), 714 F.2d 581; *Marshall v. Celotex Corp.* (E.D. Mich. 1987), 651 F. Supp. 389; *Hannon v. Waterman Steamship Corp.* (E.D. La. 1983), 567 F. Supp. 90; *Prelick v. Johns-Manville Corp.* (W.D. Pa. 1982), 531 F. Supp. 96; *In re Related Asbestos Cases* (N.D. Cal. 1982), 543 F. Supp. 1152; *Starling v. Seaboard Coast Line R.R. Co.* (S.D. Ga. 1982), 533 F. Supp. 183; *Tidler v. Eli Lilly & Co.* (D.C. Cir. 1982), 95 F.R.D. 332; *Gaulding v. Celotex Corp.* (Tex. 1989), 772 S.W.2d 66; *Case v. Fibreboard Corp.* (Okla. 1987), 743 P.2d 1062; *Goldman v. Johns-Manville Sales Corp.* (1987), 33 Ohio St. 3d 40, 514 N.E.2d 691; *Nicolet, Inc. v. Nutt* (Del. 1987), 525 A.2d 146, *aff'g In re Asbestos Litigation* (Del. Sup. Ct. 1986), 509 A.2d 1116; *Celotex Corp. v. Copeland* (Fla. 1985), 471 So. 2d 533; *Mullen v. Armstrong World Industries, Inc.* (1988), 200 Cal. App. 3d 250, 246 Cal. Rptr. 32.

Plaintiff in the present case expressly relies on the *Smith* court's acceptance of "the modified alternate liability theory first adopted by the Washington Supreme Court in *Martin v. Abbott Laboratories*" (1984), 102 Wash. 2d 581, 689 P.2d 368 (product liability action against DES manufacturers). The Washington Supreme Court, however, has since commented on that same theory of liability in an asbestos case. In *Lockwood v. AC & S, Inc.* (1987), 109 Wash. 2d 235, 744 P.2d 605, that court stated that the use of a market share theory in asbestos cases was a substantial and complex issue, which it declined to address "in detail" in that case. The court did note, however, that "the use of market-share alternate liability theory in the asbestos products context is not without difficulties." *Lockwood v. AC & S, Inc.*, 109 Wash. 2d at 245 n.6, 744 P.2d at 612 n.6, citing Note, *The Causation Problem in Asbestos Litigation: Is There an Alternative Theory of Liability?* 15 Ind. L. Rev. 679, 691-711 (1982),

and *Celotex Corp. v. Copeland* (Fla. 1985), 471 So. 2d 533. *Cf. Sholtis v. American Cyanamid Co.* (1989), 238 N.J. Super. 8, 568 A.2d 1196 (construing *Lockwood* as intimating that a market share theory might be advisable in the proper asbestos case).

The courts holding that asbestos, unlike DES, could not accommodate the market share theory of liability have relied upon the inherent differences between DES and asbestos. DES is a truly fungible product. DES was produced pursuant to one formula, and so it had identical physical properties and chemical compositions. Thus, pregnant women ingesting DES were exposed to the same risk. (*Vigiolto v. Johns-Manville Corp.*, 643 F. Supp. at 1463, *aff'd* (3d Cir. 1987), 826 F.2d 1058; *Celotex Corp. v. Copeland*, 471 So. 2d at 537-38.) In stark contrast, asbestos products vary drastically as to the risk of harm they present, partially due to the fact that there are six different types of asbestos silicates. 471 So. 2d at 537-38.

Plaintiff concedes that the six asbestos fibers are not identical, but maintains that they are "all considered to be carcinogenic under both federal and state law," including the Illinois Asbestos Abatement Act (Ill. Rev. Stat. 1987, ch. 122, pars. 1401 through 1415(a)), and *Zurich Insurance Co. v. Raymark Industries* (1987), 118 Ill. 2d 23, 514 N.E.2d 150 (recognizing that each type of asbestos fiber inhaled over the exposure period contributes to the eventual development of the disease).

Each type of fiber, however, has a different toxicity. In addition, other significant variables include the physical properties of the product itself, the percentage of asbestos used in the product, the form of the product and the amount of dust it generates. The greater the product's tendency to produce airborne fibers, the greater the likelihood that the fibers will be ingested and produce disease. Thus, the products with high concentrations of asbestos fibers have a correspondingly high potential for inducing disease. The geographical origin of the mineral can also affect the product's risk potential. *Vigiolto v. Johns-Manville Corp.*, 643 F. Supp. at 1463, *aff'd* (3d Cir. 1987), 826 F.2d 1058; *Celotex Corp. v. Copeland*, 471 So. 2d at 537-38.

Unlike DES, asbestos is not a product. Instead, asbestos is a generic name for a family consisting of more than 30 different minerals. (*Mullen v. Armstrong World Industries, Inc.*, 200 Cal. App. 3d at 258, 246 Cal. Rptr. at 37, citing *Goldman v. Johns-Manville Sales Corp.*, 33 Ohio St. 3d at 50, 514 N.E.2d at 700.) Significantly, the market share liability theory was formulated in *Sindell v. Abbott Laboratories* (1980), 26 Cal. 3d 588, 163 Cal. Rptr. 132, 607 P.2d 924, where the product involved, DES, carried with it a singular risk

factor. (*Case v. Fibreboard Corp.*, 743 P.2d at 1066.) In *Sindell*, the court held that public policy considerations justified shifting the burden of proof of causation from plaintiff to defendants in order that innocent plaintiffs could recover against negligent defendants, where each potential defendant shared responsibility for producing a product which presented a single risk factor. (*Case v. Fibreboard Corp.*, 743 P.2d at 1066.) In the asbestos cases, however, such a balance cannot be struck due to the incalculable difficulties where the tortfeasor cannot be identified, and the injury caused, unlike that caused by DES, does not arise at a specific time. Asbestos continues to cause injury throughout the time of its use and exposure.

■■ We agree with the rationale of other courts which have found it impossible to identify sufficient public policy reasons to support the use of market share liability in asbestos cases. "[T]he public policy favoring recovery on the part of an innocent plaintiff does not justify the abrogation of the rights of a potential defendant to have a causative link proved between that defendant's specific tortious acts and the plaintiff's injuries where there is a lack of circumstances which would insure that there was a significant probability that those acts were related to the injury." (*Case v. Fibreboard Corp.*, 743 P.2d at 1067.) Furthermore, we agree that the problem of how to apportion liability and define the relevant product and geographic markets would be extraordinarily complex and not feasible. (See *Blackston v. Shook & Fletcher Insulation Co.*, 764 F.2d at 1483; *Vigiolto v. Johns-Manville Corp.*, 643 F. Supp. at 1464, *aff'd* (3d Cir. 1987), 826 F.2d 1048; *Celotex Corp. v. Copeland*, 471 So. 2d at 538; *In re Related Asbestos Cases*, 543 F. Supp. at 1158.) Additionally, eliminating a causation requirement in the area of asbestos-related injuries would force every manufacturer to be an insurer of its own products and all generically similar products manufactured by competitors. *Blackston v. Shook & Fletcher Insulation*, 764 F.2d at 1483.

Finally, we note that the counts pending in the trial court indicate that plaintiff has some ability to identify certain manufacturers who allegedly caused decedent's injury. Such identification would, of course, preclude the use of the market share liability theory. See *Vigiolto v. Johns-Manville Corp.*, 643 F. Supp. at 1463 n.6, citing *Prelick v. Johns-Manville Corp.* (W.D. Pa. 1982), 531 F. Supp. 96, and *Copeland v. Celotex Corp.* (Fla. 1985), 471 So. 2d 533.

■■ We conclude that plaintiff has failed to state a cause of action for market share liability. We align Illinois with the overwhelming majority of jurisdictions which decline to extend that theory of liability to asbestos cases. We hold that the trial court prop-

erly dismissed counts V through VIII for failure to state a cause of action.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

EGAN and RAKOWSKI, JJ., concur.