2000 OK CIV APP 106

**Mike BASFORD, Plaintiff/Appellant,**

v.

**GRAY MANUFACTURING CO., INC., Defendant/Appellee.**

No. 94,060.

Court of Civil Appeals of Oklahoma, Division No. 3.

Sept. 8, 2000.

Steven T. Horton, Abel, Musser, Sokolo-sky, Mares & Kouri, Oklahoma City, Oklahoma, for Plaintiff/Appellant.

Reggie N. Whitten, Jason E. Roselius, Philip Anderson, Whitten, Mcguire, Wood, Terry, Roselius & Dittrich, Oklahoma City, Oklahoma, for Defendant/Appellee.

## OPINION

ADAMS, Judge:

¶ 1 Mike Basford was under the rear axle of a semi-tractor truck, guiding u-bolts into place as part of repairing the suspension on the tractor when the tractor fell on him, allegedly causing injury. Basford sued Gray Manufacturing Co., Inc., alleging that the tractor fell because the floor lift which was used to elevate the tractor frame failed and that the lift was manufactured by Gray. According to Basford, the lift was defective and unreasonably dangerous, making Gray liable for his injuries under Manufacturers' Products Liability and negligence.

¶ 2 After some discovery, Gray requested summary judgment, attaching evidentiary materials which it said demonstrated Basford could not recover on Manufacturers' Products Liability or negligence. Basford responded with evidentiary materials of his own and argued that fact issues prevented summary judgment. The trial court agreed with Gray and entered judgment for Gray against Basford. Basford appeals.

## STANDARD OF REVIEW

¶ 3 In addressing Basford's claim that summary adjudication was inappropriate, we must examine the pleadings, depositions, affidavits and other evidentiary materials submitted by the parties and affirm if there is no genuine issue as to any material fact and Gray was entitled to judgment as a matter of law. *Perry v. Green,* 1970 OK 70, 468 P.2d 483. All inferences and conclusions to be drawn from the evidentiary materials must be viewed in a light most favorable to Basford. *Ross v. City of Shawnee,* 1984 OK 43, 683 P.2d 535. We are limited to the issues actually presented below, as reflected by the record which was before the trial court rather than one that could have been assembled. *Frey v. Independence Fire and Casualty Company,* 1985 OK 25, 698 P.2d 17.

## FACTS

¶ 4 Basford worked as a mechanic for Stinson Truck and Trailer Repair. On the day in question, he and other mechanics were repairing the rear suspension on a semi-tractor truck. The repairs required the frame to be raised off of the rear axle to allow room for insertion of parts of the suspension, including leaf springs which were held together by u-bolts. The u-bolts are inserted after the leaf springs have been put in place, and the frame must be lowered gradually to allow the holes in the springs to line up and allow insertion of the open ends of the u-bolt. According to Basford, this process requires some person to be under the elevated frame to guide the ends of the u-bolt through the holes without scarring the fine threads.

¶ 5 The workers used a floor lift, allegedly manufactured by Gray, to elevate the frame. At the time of the incident in question, they were not using "jack stands" in addition to the Gray lift, despite warnings on the lift, which Basford acknowledged, that it should not be used without such jack stands. According to Basford, jack stands could not be used in this process because the frame had to be lowered slowly to allow the holes to line up for insertion of the u-bolt. Jack stands would have prevented the gradual lowering of the frame. Basford also presented evidentiary material tending to show that the lift was designed to allow such a gradual lowering and should have sustained the weight of the frame without the assistance of any jack stands.

¶ 6 Basford was under the tractor, wedged between the drive shaft and the elevated frame, attempting to guide the u-bolts when

the lowering process began. Instead of gradually lowering the frame, according to Basford, the lift failed, allowing the entire weight of the frame to come down on him, allegedly causing injury.

## ANALYSIS

¶ 7 Gray based its summary judgment motion on three basic arguments.[1] The trial court's order does not identify the argument on which its judgment was based, and we will address all three in the order we find appropriate.

### Did Basford Misuse the Lift?

■ ¶ 8 According to Gray, the cause of this incident and of any injury to Basford was his blatant disregard of the warnings to use the lift only with jack stands in place. Under this theory, if the jack stands had been in place, they would have held up the frame, even if the lift failed. There is no factual dispute about this. However, the legal effect of these facts is not so clear. Misuse or abnormal use of the product is a defense to an action in Manufacturer's Products Liability, but applies only where the consumer's method for using the product is one which the manufacturer did not intend and could not reasonably be anticipated by the manufacturer. *Fields v. Volkswagen of America, Inc.*, 1976 OK 106, 555 P.2d 48.

¶ 9 The evidentiary material presented to the trial court included information from which reasonable people might conclude that the method of using the lift, chosen by Basford and his co-workers, was an acceptable and foreseeable method for accomplishing their task. To be sure, there was other evidentiary material supporting the conclusion that they could have complied with the warnings. On this record, the question of whether it was reasonably foreseeable that a person with Basford's training as a mechanic would find it necessary to use the lift without jack stands under these circumstances was one on which reasonable people might differ.

Summary judgment was inappropriate on Gray's misuse argument.

### Was the Lift Unreasonably Dangerous?

■ ¶ 10 Gray argued that the lift could not be unreasonably dangerous because Basford had not demonstrated any defect in the product. This contention is not supported by the record. Basford presented expert testimony which, if believed, demonstrated a design defect in the "wiper ring" allowed the ring to move out of place and obstruct the proper operation of the mechanism on the lift which was supposed to allow the lift to gradually lower the elevated object and prevent it from suddenly releasing the pressure which provided the force to raise the object. Gray pointed out that Basford's expert had not replicated the incident in laboratory tests, but the expert testified such tests were unnecessary to validate his theory. However, the credibility of the expert's opinion, which may or may not be affected by the lack of laboratory replication of the incident, is a decision for the trier of fact. The evidentiary material presented by Basford was sufficient to withstand summary judgment analysis on the theory that the product was not defective.

¶ 11 In this same connection, Gray argued that its warning was adequate to inform users like Basford of the dangers of using the lift without jack stands. At least on this record, Basford does not dispute that he was fully aware of the danger of the frame falling if the lift failed and that jack stands would have prevented injury in such a case. However, Gray's warning did not inform users like Basford of the risk that the lift would fail to function normally because of a design defect. Basford's use of the lift without jack stands was arguably foreseeable, and this record supports a reasonable inference that the lift would have been adequate without the jack stands if it had performed as intended. Summary judgment cannot be sup-

1. Gray's motion actually used four main propositions. However, we consider as one basic contention, *i.e.*, that the lift was not unreasonably dangerous, the arguments contained in Proposition II and Proposition III, namely that the product was not defective, there was a proper warning, and that the lift was not "unreasonably dangerous" because Basford was a sophisticated user.

ported on the theory that Gray absolved itself from all liability by its warning.

¶ 12 Finally in this connection, Gray argued that Basford's sophistication prevented the lift from being "unreasonably dangerous" beyond the expectation of the ordinary consumer. To the contrary, one could reasonably conclude from the evidentiary material that Basford's experience would lead him to believe that the lift would perform as intended and that its use under these circumstances without jack stands, because the job arguably required it, presented no significant risk that the frame would suddenly fall. Nothing in the evidentiary material suggests that Basford should have known that the alleged design flaw in the wiper ring would allow the lift to completely release suddenly instead of slowly lowering the frame. On this record, the question of whether the product was "unreasonably dangerous" must be answered by the jury.

### Which Lift Was Involved in this Incident?

¶ 13 Gray contended summary judgment was appropriate because Basford would not be able to demonstrate which lift, out of three lifts at the shop, was involved in this incident. In order to recover, according to Gray, Basford would have to identify with "significant probability" the product which caused his injuries. *See Case v. Fibreboard Corporation,* 1987 OK 79, 743 P.2d 1062. In *Case,* the Oklahoma Supreme Court answered a certified question from the United States Court of Appeals for the Tenth Circuit in a case involving alleged injuries from asbestos fibers *where the precise tortfeasor whose product injured the plaintiff could not be identified.* The Court concluded that it would not adopt some theory of "collective liability" which would impose responsibility upon the entire industry of those using asbestos in their products.

¶ 14 *Case* is inapplicable on these facts. Although there is some dispute as to which lift was used, Gray manufactured two of the potential candidates, and there is evidence that the only other lift in the shop was not used in this operation. Basford's expert testified that the two Gray lifts were identical in design and that it was of no significance to

his conclusions which one was actually used. Moreover, Basford specifically identified the lift he believed was involved, although Gray contends his earlier statements and testimony from others disputes that. To the extent the identification of the specific lift which allegedly failed is necessary in this case, if at all, the evidentiary material presents at least a question of fact concerning that identification. Summary judgment on this basis, was therefore inappropriate.

### CONCLUSION

¶ 15 The facts shown by the evidentiary material presented to the trial court, considered in the light most favorable to Basford, and the reasonable inferences from those facts are not consistent only with judgment for Gray. Summary judgment was inappropriate. Accordingly, the judgment of the trial court is reversed, and the case is remanded for further proceedings consistent with this opinion.

### REVERSED AND REMANDED.

¶ 16 HANSEN, V.C.J., concurs; JOPLIN, J., dissents with separate opinion.

JOPLIN, Judge, dissenting:

¶ 1 The majority holds that "the question of whether it was reasonably foreseeable that a person of Basford's training would find it necessary to use the lift without jack stands ... was one of which reasonable people might differ," precluding summary judgment. The very presence of the warnings to employ jack stands, it seems to me, clearly shows that Gray indeed foresaw such a possibility, and for that reason, specifically warned against use of its jack without stands under any circumstances.

¶ 2 The defendant in a manufacturers' products' liability case is not liable for misuse of its product in an unforeseeable manner. *See, e.g., Fields v. Volkswagen of America, Inc.,* 1976 OK 106, ¶ 25, 555 P.2d 48, 57. ("A manufacturer is not liable for injuries resulting from [abnormal] use [of its product] if it is not foreseeable.") On the other hand, "where the seller has reason to anticipate that danger may result from a particular use,

... he [is] required to give adequate warning of the danger, and a product sold without such warning is in a defective condition. Restatement of Torts (Second), § 402A, Comment h." *Duane v. Oklahoma Gas & Electric Co.*, 1992 OK 97, ¶ 4, 833 P.2d 284, 286. That is:

A duty to warn [is] ... based upon the foreseeability that the user would use the product in that way, the type of danger involved, and foreseeability of the user's knowledge of the danger.

*Id.*

¶ 3 Consequently, where a product is used in an industrial setting by one supposedly skilled at his job, a manufacturer has "no duty to warn of dangers inherent in the task or which are created by oversight or negligence of the contractor or fellow employees." *Duane*, 1992 OK 97, ¶ 8, 833 P.2d at 287. Moreover, a manufacturer is entitled to assume that professional users of its product will heed its warnings, and is not required to foresee that professional users will fail to read its warnings, then use the product in a manner that the manufacturer's instructions expressly warned against. *Hutchins v. Silicone Specialties, Inc.*, 1993 OK 70, ¶ 20, 881 P.2d 64, 67.

¶ 4 In the present case, the uncontroverted evidence showed that Basford was a foreseeable and knowledgeable consumer of the subject product, having admitted to training in this specific area, and having used lifts and jack stands with attendant safeties for several years. The uncontroverted evidence also showed Gray specifically warned users of its jack to employ lift stands and safeties, and Basford admitted he read and understood the warnings. The uncontroverted evidence lastly showed that Basford did not employ lift stands and specifically caused the safety to be disengaged at the time of the accident, all in violation of Gray's instructions.

¶ 5 In short, it cannot be seriously disputed—and in my mind, reasonable persons would not differ—that Gray directed users of its products to employ lift stands in order that users of its product be protected from the obvious danger of collapse of a vehicle raised on one of its jacks. Basford admitted he appreciated this very danger of which Gray warned and which resulted in his injury.

¶ 6 Basford argues the particular job required the use of the jack without lift stands. However, inasmuch as Gray cautioned against use of its jack without stands, Gray's jack was obviously not the right tool for the job, and Gray should not be held liable for use of its jack in a manner contrary to the manufacturer's specific warnings of danger.

¶ 7 The majority holds insufficient the warnings as given because the warnings did not warn of the specific, alleged defect which, according to Basford, caused the jack's failure to perform as expected. However, because the warning mandated the use of stands under any circumstances, I would hold the warning sufficient to apprise users of the danger of the collapse of a vehicle raised on a Gray lift. The majority's construction of the warning renders any warning, however specific, defective and subject to attack, a position I cannot accept.

¶ 8 Under the admitted circumstances of this case, I would therefore hold that Gray was entitled to assume that Basford would heed its warnings, and was not required to foresee that Basford would fail to heed its warnings and use the lift in a manner that the manufacturer's instructions expressly warned against. Gray should not be held liable for the admitted misuse of the jack without stands.

¶ 9 I would consequently conclude the trial court did not err in granting summary judgment to Gray, and respectfully dissent to the contrary decision of the majority.