[No. A054969. First Dist., Div. Four. July 28, 1992.]

RICHARD WHEELER et al., Plaintiffs and Appellants, v.
RAYBESTOS-MANHATTAN et al., Defendants and Respondents.

## COUNSEL

Cartwright, Slobodin, Bokelman, Borowsky, Wartnick, Moore & Harris, Harry F. Wartnick, Steven Harowitz and Daniel U. Smith for Plaintiffs and Appellants.

Erickson, Arbuthnot, Brown, Kilduff & Day, William G. Hoback, Sally R. Waid, Gilles, Nicora, Minor & Sullivan , Timothy J. Minor, Jared R. Smith, Keesal, Young & Logan, Peter R. Boutin, Eric R. Swett and Julie L. Somerville for Defendants and Respondents.

Gordon & Rees, Michael T. Lucey, Norman J. Hamill, Sullivan, Roche & Johnson, Robert E. Paterson and Hilary N. Rowen as Amici Curiae on behalf of Defendants and Respondents.

## OPINION

POCHÉ, Acting P. J.—Plaintiffs Richard Wheeler, Earnest Hayes, Herman Kirktendoll, Juliga Woods and Preston Bartice appeal from a judgment entered after the trial court granted defendants' motion for nonsuit as to each of their complaints. The five complaints which were consolidated for the purpose of trial all allege personal injuries suffered from exposure to asbestos. Each of the defendants, Morton International, Lear Siegler Diversified Holdings, and Firestone Tire and Rubber, manufactures, or is arguably a successor in interest to a manufacturer of, brake products.[1] These cases, like all asbestos cases in San Francisco Superior Court, are subject to a series of general orders. General order 21 provides that the theory of market share liability articulated in *Sindell* v. *Abbott Laboratories* (1980) 26 Cal.3d 588 [163 Cal.Rptr. 132, 607 P.2d 924] is inapplicable to the asbestos cases. When the trial court here indicated that it was bound to comply with the general order, plaintiffs were permitted to make an offer of proof. At the conclusion of the offer of proof the court granted defendants' motion for nonsuit.

Thus, the matter before us is purely a question of law: Did plaintiffs state facts sufficient to establish a prima facie case of market share liability as defined in *Sindell* against defendant manufacturers of brake products?

### Discussion

Code of Civil Procedure section 581c[2] specifically permits a motion for nonsuit at the close of a plaintiff's opening statement. (§ 581c, subd. (a).) In this instance plaintiffs made an offer of proof in lieu of an opening statement, and we shall treat that offer as the equivalent of an opening statement. ■ When the court grants nonsuit after an opening statement it must assume that plaintiff can prove all the favorable facts alleged. (*Loral Corp.* v. *Moyes* (1985) 174 Cal.App.3d 268, 272 [219 Cal.Rptr. 836].) A nonsuit is properly granted after the opening statement only if the court concludes there is no evidence of sufficient substantiality to support a verdict in favor of the plaintiff. (*Willis* v. *Gordon* (1978) 20 Cal.3d 629, 633 [143 Cal.Rptr. 723, 574 P.2d 794].) ■ On appeal we apply the same standard used by the trial court in ruling on the motion. (*Carson* v. *Facilities Development Co.* (1984) 36 Cal.3d 830, 839 [206 Cal.Rptr. 136, 686 P.2d 656].)

---

[1] This court granted leave to file an amicus curiae brief to Allied Signal (successor in interest to the Bendix Corp. which manufactured brake products) and to Abex Corporation which likewise once manufactured brake products. Both entities were defendants in the case that have already settled with plaintiffs.

[2] Unless otherwise noted all subsequent statutory references are to the Code of Civil Procedure.

■ In *Sindell* our Supreme Court adopted a theory of liability for use where "fungible goods" which cause harm to consumers "cannot be traced to any specific producer." (*Sindell* v. *Abbott Laboratories, supra,* 26 Cal.3d 588, 610.) The product in question was the drug diethylstilbesterol (DES) which was marketed as a miscarriage preventative but which caused cancerous conditions many years later in the offspring of the pregnant women who took it. All the DES which was sold was manufactured to an identical formula. (*Id.* at p. 611.) Because of the circumstances of the drug's use and the lapse of time, plaintiff Sindell was unable to identify the maker or makers of the drug which caused her injury. (*Id.* at pp. 600-601.) From *Sindell* came a new theory of market share liability only available against the makers of a "fungible" product "which cannot be traced to a specific producer" and only applicable if plaintiff joins a "substantial share" of the makers of the product.

By general order 21 the *Sindell* theory of liability was rejected by the San Francisco Superior Court in asbestos cases for a variety of sound reasons. As an initial matter the court found that "asbestos litigation does not involve an inability of the plaintiffs to identify the manufacturers/suppliers" and thus does not involve the deprivation of a remedy. Secondly, the court noted that many of the asbestos defendants had been exposed to a variety of products in various industries and therefore the difficulties of determining market share would be tremendous.

This court itself came to much the same conclusion in a case involving exposure to asbestos contained in products used in home construction. (*Mullen* v. *Armstrong World Industries, Inc.* (1988) 200 Cal.App.3d 250 [246 Cal.Rptr. 32].) We noted there that asbestos, unlike DES, was not a single product but merely a generic name for an ingredient in a variety of products each of which posed a different risk of harm. (*Id.* at pp. 255-257.) Accordingly, we concluded that the plaintiffs, owners of homes built between 1912 and 1978 which contained friable asbestos and materials containing friable asbestos, had failed to state a cause of action under a theory of market share liability. (*Id.* at pp. 252, 257.)

In this case plaintiffs made an offer of proof in which they asserted that each of them had been exposed to asbestos fibers in brake products as well as nonbrake products. However, they sought to proceed on a market share theory only as to the makers of brake products. They asserted that their inability to identify the makers of the brake products was because their primary exposure to asbestos fiber from brake pads came during inspection or replacement of worn pads when dust containing asbestos which had been generated by the friction on the pads during braking was blown out of the brake drums. At the time of such exposure these worn brake pads could no longer be identified by brand.

On the issue of fungibility plaintiffs offered to prove that the brake pads were fungible to the extent that a pad of a given size, regardless of who made it, could be used on a variety of different vehicles. Furthermore, they note that the pads manufactured by defendants were all composed solely of chrysotile asbestos fiber. Finally, the brake pads all contained between 40 and 60 percent asbestos by weight.

Plaintiffs asserted, without specifying an exact percentage, that they had joined "a substantial share of the manufacturers of defective friction products" and that they were prepared to establish the market share of each defendant who remained in the action.[3]

Webster's defines fungible as "[o]f such a kind or nature that one specimen or part may be used in place of another specimen or equal part in the satisfaction of an obligation" or "[i]nterchangeable." (Webster's New Collegiate Dict. (7th ed. 1969) p. 338.) Defendants raise several objections to viewing brake pads as fungible goods. They argue that chrysotile fibers can come from various geographic sources, that not all pads were manufactured with the same bonding agents, and finally that because pads come in many different shapes and compositions designed to suit the needs of particular vehicles, the pads cannot be viewed as a fungible item.

They are correct that brake pads are not manufactured from one single chemical formula like DES. It is irrelevant, of course, that pads come in various sizes and shapes. A single type of asbestos fiber, chrysotile, was used in all the pads, and the amount of asbestos by weight in the pads varied within a limited range. While brake pads are not absolutely interchangeable each for one another and hence are not fungible from the standpoint of an auto mechanic, they are fungible for the purposes of *Sindell* by virtue of containing roughly comparable quantities of the single asbestos fiber, chrysotile.

This case is readily distinguishable from an Ohio case in which a single asbestos-containing product was found inappropriate for market share liability. In *Goldman* v. *Johns-Manville Sales Corp.* (1987) 33 Ohio St.3d 40 [514 N.E.2d 691] the product was duct tape. However, there was evidence that the tape made by the various defendants varied in its asbestos content by weight from 15 to 100 percent. (*Id.* at p. 697.) Thus exposure to the tape consisting 100 percent of asbestos carried a very different risk of harm than exposure to tape containing only 15 percent asbestos. (*Id.* at p. 701.) In this case the asbestos content of the brake pads is not identical, but it varies in a much

---

[3]Bankruptcy stays precluded plaintiffs from proceeding against Raybestos-Manhattan, H.K. Porter, and Johns-Manville.

more restricted range. Therefore the risk of harm posed by the products of each manufacturer is more nearly equivalent.

Defendants also argue that these plaintiffs are not absolutely unable to identify any of the makers of the brake pads with which they may have worked. Indeed, plaintiffs stipulated that several of them could identify at least one manufacturer of pads. Such identifications were made when new pads were being installed, since manufacturer's markings were lost once the pads were abraded by use. Plaintiffs also offered to show through expert testimony and interrogatory responses of defendants that the bulk of exposure to asbestos fiber occurred not at the time of installation of new pads, but during inspection and repair of worn out pads.

Defendants maintain that so long as plaintiffs can identify a single maker of pads they are precluded from pursuing a *Sindell* theory of recovery. In support of this position they cite to a Pennsylvania case, *Prelick* v. *Johns-Manville Corp.* (W.D.Pa. 1982) 531 F.Supp. 96. In *Prelick* plaintiffs alleged exposure to asbestos-containing thermal insulation products. They named 11 defendants whom they characterized as representing " 'substantially all of the thermal insulation industry' " supplying the products to which they had been exposed. (*Id.* at p. 97.) They further alleged that "Certain exposures of plaintiff[s] to various asbestos-containing products of the named defendants cannot be identified." (*Id.* at p. 97, fn. 1.) In remarkably tautological reasoning the appellate court concluded that since plaintiffs could name so many producers of insulation products market share liability á la *Sindell* was unavailable to them. (*Id.* at p. 98.) Presumably, Ms. Sindell could also name the major producers of DES. Her problem, however, was in knowing which of them supplied the pills taken by her mother.[4]

In the case before us, the fact that plaintiffs may be able to identify one or more manufacturers of new brake pads with which they worked should not be determinative because plaintiffs alleged that the "vast majority" of their exposure to brake dust came from used brake pads which were unidentifiable at the time because their trade names and trademarks had been worn off. Thus the risk was posed only once the product was in use, yet the abrasion of use destroyed the opportunity to identify the maker of the product. Unlike DES whose maker might have been identifiable at the time it was ingested, the brake pads which caused the risk were already unidentifiable at the time plaintiffs were exposed to their asbestos fibers.

---

[4]*Starling* v. *Seaboard Coast Line R. Co.* (S.D.Ga. 1982) 533 F.Supp. 183 also cited in support of the proposition that a single identifiable maker renders *Sindell* inapplicable is not on point. It contains general rulings applicable to a number of cases and concludes that market share liability is inappropriate as applied to makers of various products whose only common ingredient is asbestos. (*Id.* at p. 191.) This is not a proposition we dispute and is in accord with our own ruling in *Mullen* v. *Armstrong World Industries, Inc.*, *supra*, 200 Cal.App.3d 250.

While the quantity of asbestos to which each plaintiff was exposed would presumably vary with the size of the pad and the amount of dust it had generated, it is also likely that no plaintiff was subjected only to pads either of a single size or from a single maker. Here, unlike the DES cases, plaintiffs are more apt to have been exposed to the asbestos from brake pads of many if not all of the major manufacturers. Thus, there is a greater likelihood that plaintiffs were exposed to the products of any given manufacturer with roughly the same frequency that that manufacturer's brake pads occupied the market. In *Sindell* the court reasoned that at least over a large body of cases market share would roughly equate to liability. (*Sindell* v. *Abbott Laboratories, supra*, 26 Cal.3d at p. 612.) Here that fit is much tighter as to each plaintiff, although a defendant may still be able to show that it could not have been responsible for the injuries of any given plaintiff.[5]

Finally, defendants object that plaintiffs have not joined makers of a substantial percentage of the brake pads which were on the market. This is indeed a "threshold requirement" as our Supreme Court in a post-*Sindell* decision has made clear. (*Murphy* v. *E. R. Squibb & Sons, Inc.* (1985) 40 Cal.3d 672, 684 [221 Cal.Rptr. 447, 710 P.2d 247].) Since the issue is before us on nonsuit, we need only inquire whether plaintiffs offered to prove that the defendants named constituted a substantial share of such makers. They did. Whether they can prove that is another matter.

Because of the peculiar facts presented by exposure to asbestos fiber from brake pads we conclude that general order 21 is inapplicable to the facts of the claim stated by plaintiffs. We further find that they have made an offer of proof as to each of the prima facie elements of a case for market share liability under *Sindell*. Having done so, it was error to grant defendants a nonsuit after opening statement.

We wish to emphasize, however, the narrowness of this holding. Plaintiffs have not proven the elements of a market share case; we hold only that they should be allowed to attempt it.

We reverse and remand.

Perley, J., and Reardon, J., concurred.

Petitions for a rehearing were denied August 25, 1992, and respondents' petitions for review by the Supreme Court were denied October 16, 1992. Panelli, J., was of the opinion that the petition should be granted.

---

[5]For example Morton International argues that it cannot have been responsible for brake pad exposure suffered by plaintiff Kirktendoll who retired before Morton began producing brake pads.