714 So.2d 351 (1998)
Jane A. KING, etc., Petitioner,
v.
CUTTER LABORATORIES, DIVISION OF MILES, INC., et al., Respondents.
No. 88548.
Supreme Court of Florida.
March 26, 1998.
Rehearing Denied June 11, 1998.
Order Dismissing Review September 30, 1998.
*352 James C. Blecke of Deutsch & Blumberg, P.A., Miami, and Maron E. Lovell of Williams, Brasfield, Wertz, Fuller, Goldman, Freeman & Lovell, St. Petersburg, for Petitioner.
Alan C. Sundberg, Sylvia H. Walbolt and Edward W. Gerecke of Carlton, Fields, Ward, Emmanuel, Smith & Cutler, P.A., Tampa, and Sara Gourley and Steve Ellison of Sidley & Austin, Chicago, IL, on behalf of Armour Pharmaceutical Company; David R. Tyrrell of Hill, Ward & Henderson, P.A., Tampa, and Amy Ginensky of Dechert, Price & Rhoads, Philadelphia, PA, on behalf of Baxter Healthcare Corporation; Patricia E. Lowry and David L. Ferguson of Steel, Hector & Davis, West Palm Beach, O'Connor, Cohn, Dillon & Barr, San Francisco, CA, and Geoffrey R.W. Smith, Washington, DC, on behalf of Miles, Inc.; Jeffrey B. Shapiro and Felicia Witt of Herzfeld & Rubin, Miami, and David Bell of Knapp, Peterson & Clarke, Glendale, CA, on behalf of Alpha Therapeutic Corporation, for Respondents.
Judith S. Kavanaugh and William L. Earl of Earl, Blank, Kavanaugh & Stotts, P.A., Miami, for Florida Chapter, National Hemophilia Foundation, Inc., amicus curiae.
James R. Green of Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, Pensacola, and Robert L. Parks of Haggard & Parks, Coral Gables, for Florida Academy of Trial Lawyers, amicus curiae.
Bruce Rogow and Beverly A. Pohl, Fort Lauderdale, for Florida Defense Lawyers Association and Pharmaceutical Research and Manufacturers of America, amici curiae.
OVERTON, Justice.
We have for review the decision of the Second District Court of Appeal in King v. Cutter Laboratories, 685 So.2d 1358 (Fla. 2d DCA 1996). There, the district court affirmed a summary judgment that held, as a matter of law, that the market share alternate theory of liability did not apply to Factor VIII blood product concentrates. Factor VIII concentrate is a blood product used in the treatment of hemophilia and, in this instance, the plaintiff below alleged that all the blood products of these respondents, Cutter Laboratories, Division of Miles, Inc.; Armour Pharmaceutical Company; Alpha Therapeutic Corporation; and Baxter Healthcare Corporation, were contaminated with HIV during the early 1980s.
Although the district court affirmed the trial court's conclusion that the market share alternate theory is inapplicable in this instance, the district court recognized the important implications of this decision in the area of products liability and certified the following question as a matter of great public importance:
WHETHER THE MARKET-SHARE ALTERNATE THEORY OF LIABILITY, AS DEVELOPED IN CONLEY V. BOYLE DRUG CO., 570 So.2d 275 (Fla. 1990), EXTENDS TO CASES INVOLVING THE TRANSMISSION OF HIV THROUGH FACTOR VIII CONCENTRATE PROCURED FROM MULTIPLE SOURCES?
Id. at 1360. We have jurisdiction. Art. V, § 3(b)(4), Fla. Const.
Whether the market share alternate theory of liability is applicable to all the producers of the Factor VIII blood concentrates is a legal issue for a judge and requires a court to determine if the defendants are proper parties. In this instance, we conclude there is a need for an evidentiary hearing concerning the production of this blood product in this time period and whether all of these products were uniformly infectious with the HIV virus. For the reasons expressed, we relinquish jurisdiction for further proceedings because this record does not provide this Court sufficient scientific information on this significant issue. Once this Court makes a determination *353 that this product is subject to the market share theory of liability, that decision could be applicable to all cases involving this product, not just in this case. We are relinquishing jurisdiction to conserve the parties' and judicial resources. We only relinquish jurisdiction for the purpose of this limited evidentiary hearing. Upon the entry of its order making a determination of whether the market share alternate theory of liability applies, either party may seek review of the trial court's decision in this Court.

FACTS
Jane A. King was married to Joseph "Louie" King, III, deceased. She is the personal representative of his estate. Mr. King was a hemophiliac who died of Acquired Immune Deficiency Syndrome (AIDS). It is alleged that Mr. King's AIDS infection was the result of using a Factor VIII concentrate that was infected with the HIV virus.[1] After her husband's death, Mrs. King brought a wrongful death action against the four manufacturers who marketed the product in Florida.[2] Mr. King stated in a deposition that he was unable to recall which brand(s) of Factor VIII concentrate he had used. In light of this inability to identify the specific concentrates used, Mrs. King claims that the market share alternate theory of liability should apply. It is Mrs. King's underlying assumption that the entire supply of Factor VIII concentrates produced during the relevant time period was infected with the HIV virus to some degree and she presented expert testimony to that effect. The respondents presented expert testimony that these blood products were manufactured differently and were not uniformly infected even if they contained the HIV virus.[3]
The trial court granted a summary judgment in favor of the defendants and the district court affirmed. It found this case to be similar to Celotex Corp. v. Copeland, 471 So.2d 533 (Fla.1985). In Celotex, we refused to apply a market share alternate theory of liability in the context of asbestos products because those products had different physical characteristics and presented differing risks of harm. While the primary holding in Celotex concerned the ability of the plaintiffs to identify the actual products used, we purposefully explained that the nature of asbestos was different from diethylstilbestrol (DES), a product to which the market share alternate theory of liability was applied by the Supreme Court of California in Sindell v. Abbott Laboratories, 26 Cal.3d 588, 163 Cal. Rptr. 132, 607 P.2d 924 (1980). We wrote:
The market share theory of liability was developed to provide a remedy where there is an inherent inability to identify the manufacturer of the product that caused the injury. In the present case, Copeland expressly acknowledges that he "can identify several of the products he utilized."
...
In addition, it is important to note there are inherent differences between asbestos products and the drug DES, for which the market share theory was developed, which further make the market share theory extremely difficult to apply in asbestos-injury cases. DES was produced by hundreds of companies pursuant to one formula. As a result, all DES had identical physical properties and chemical compositions and, consequently, all DES prescribed to pregnant women created the same risk of harm....
Celotex, 471 So.2d at 537-38 (second emphasis added). The latter part of this passage clearly explains the concept of differing risks of harm and serves to put forth principles which can separate asbestos cases from DES cases. In comparing this case to the Celotex case, the district court wrote:
These same inherent problems exist in applying market-share alternate liability in Factor VIII concentrate cases. Factor VIII concentrate products do not share a *354 uniform composition. Factor VIII is collected from various plasma donors at various sites across the nation. Thus, each plasma pool from which the concentrate is processed is different. Each manufacturer uses a different proprietary method to prepare its concentrate. Although it appears from the record that Human Immunodeficiency Virus (HIV) was contained in each defendant's blood products at the times relevant to Mr. King's use of the products, the defendants presented unrefuted expert testimony that the presence of HIV in the product is not the same as the product being infectious. Because there is no indication that every unit of Factor VIII concentrate was uniformly infectious, it cannot be said every unit created a uniform risk of harm.

King, 685 So.2d at 1360 (emphasis added).

ANALYSIS
At the outset, we emphasize that Factor VIII concentrate cannot be equated with either DES (as discussed in Conley) or asbestos (as discussed in Celotex). Failure to equate perfectly with DES, though, does not absolutely preclude the use of the market share alternate theory of liability. The market share doctrine is a new, evolving tort theory. The doctrine is designed to provide plaintiffs access to the courts[4] in the limited class of cases where the injured party cannot identify, after diligent inquiry, which product manufacturer in fact caused a specific injury. When products from various manufacturers pose a uniform risk of harm, this doctrine allows the courts to spread the economic loss among those manufacturers in a proportionate manner instead of leaving innocent injured parties to bear the entire loss. While the doctrine is still evolving, it has some specific restraints that limit its application.
In particular, three basic principles have developed as this doctrine has evolved in Florida. First, the doctrine applies only to negligence actions. Conley, 570 So.2d at 286. Second, the doctrine cannot be invoked unless the plaintiff first demonstrates a genuine and diligent attempt to locate and to identify the manufacturer responsible for the injury. Id. Third, the risk of harm posed by the various defendants who are producers of the products must be the same. Id. at 280 n. 6. Whether the various producers may be made party defendants when they have not been identified as having produced the product used by the plaintiff is a jurisdictional question that must be resolved as a matter of law with the aid of all available scientific evidence. This is analogous to a jurisdictional issue because the bottom line is whether or not the producing or manufacturing entities are proper party defendants.
In this case, only the third principle is presently at issue, and we find that it is unclear from the scientific evidence in the present record whether various Factor VIII concentrates, as produced by the four defendants, pose a uniform risk of harm. Indeed, the matter was essentially resolved during a relatively short hearing before the trial judge. The trial judge was clearly influenced, at least in part, by the following exchange:
[DEFENSE ATTORNEY]: Then I'll stop. I want to make it clear that Armour's position is that this is a legal question and we debate the facts and contradictions and put aside the affidavits. Even if you want to believe all similar, all everything, like Conley, the law in Florida is that the Supreme Court said Conley applies to DES. It doesn't say any product out there you can prove this and this and this. It applies generically to anything other than DES.
Our position is Conley says the law in Florida is that you prove causation except in DES. If there's going to be a change, it has to be the Supreme Court. Our position is that as a matter of law we win because market share doesn't apply and this thing has to parade its way to the Florida Supreme Court.
THE COURT: In one form or another.
[DEFENSE ATTORNEY]: Absolutely. Think about the two options: We wash our hands of this today, we try a four week trial in May of 1996, waste judicial resources to do it and appeal to the Florida *355 Supreme Court which then tells us whether we're right or wrong or we get a summary judgment that we're entitled to as a matter of law today and we march ourselves up there to the Supreme Court and if the Supreme Court decides, plaintiff, you're right, we're going to extend the doctrine [of] market share, then we come down and try the case and if the Supreme Court says, no, you don't, the case is over with.
THE COURT: ... [W]hat effect does the decision today have on the length of the trial just for my edification? Because one of the things we are supposed to do today is set it for trial. If I said, for example, let's hypothetically say that I said market share doesn't apply to this case. How long is the trial?
[DEFENSE ATTORNEY]: There is no trial. The case is over.
[PLAINTIFF'S ATTORNEY]: The case is over. If you say that, Judge, we do not have a remedy.
We understand the parties and trial judge's dilemma and commend them for trying to avoid a potential waste of the parties' and judicial resources by going to trial. In this review, though, we find that we cannot make the important policy decision necessary to answer the certified question with only the evidence in the current record. While there is information in this record as to whether all Factor VIII concentrates may or may not have had a common defect (being infected with the HIV virus), there is conflicting information as to whether all such blood concentrates were uniformly infectious. There is testimony in this record that these products were not uniformly infectious, and there also appears to be a scientific dispute as to whether these blood products, which were manufactured in different ways but still contained HIV, were all uniformly infectious.
We recognize that the National Hemophilia Foundation has filed an amicus curiae brief contending that products should not have to be identical before the market share alternate theory of liability is applied. This raises the significant issue of whether market share should apply when one product is ten percent infectious, the second product is fifty percent infectious, and the third product is ninety percent infectious. We are likewise cognizant of the contention made by another amicus curiae brief[5] indicating that an expanded doctrine of market share alternate liability could threaten the availability of treatments for life-threatening diseases.
In relinquishing jurisdiction in this case, we emphasize that this decision should not be read to signal a specific predisposition as to the final outcome of this cause. We are acknowledging only that there needs to be a full evidentiary hearing before the trial court before this Court can properly resolve the applicability of market share theories of liability to Factor VIII concentrate cases.
In the further proceedings in this cause, we again emphasize that this market share doctrine need not be limited to DES cases. As we said in Conley:
This Court has consistently recognized its "continuing responsibility to the citizens of this state" to modernize traditional principles of tort law when such becomes necessary "to ensure that the law remains both fair and realistic as society and technology change." Insurance Co. of North America v. Pasakarnis, 451 So.2d 447, 451 (Fla. 1984); see also Gates v. Foley, 247 So.2d 40, 43 (Fla.1971)("this Court has not been backward in overturning unsound precedent in the area of tort law").
Conley, 570 So.2d at 284. Nor does Conley require the application of the market share doctrine to Factor VIII concentrates.
Upon a relinquishment of jurisdiction, the trial court should take testimony to determine if the third principle of the market share alternate theory has been met. In particular, the trial court must determine if the scientific evidence establishes that the blood product produced by each of the named defendants were sufficiently uniformly infectious to justify the application of the market share alternate theory. The trial *356 judge has the authority to find from the evidence that Factor VIII concentrates are within the class of products for which the market share alternate theory of liability is appropriate or find that such doctrine is inapplicable in this case.
Accordingly, as we stated previously, we take the unusual procedural step of relinquishing jurisdiction to the trial court on this limited issue to avoid unnecessary expense and delay to the parties and use of judicial resources. We note and emphasize that we have not been presented with the question of whether the plaintiff has made a genuine and diligent attempt to locate the manufacturer of the products utilized by the decedent. At this point, we take no position as to whether such a diligent effort has been demonstrated.
In relinquishing jurisdiction, we direct that an evidentiary hearing be held within 120 days of the date this opinion becomes final. We direct that the trial court, in rendering its decision on this matter, enter findings of fact and conclusions of law. The trial court's order will be filed in this Court and this Court will then set a supplementary briefing schedule for all parties.
It is so ordered.
KOGAN, C.J., HARDING and WELLS, JJ., and GRIMES, Senior Justice, concur.
ANSTEAD, J., concurs in part and dissents in part with an opinion, in which SHAW, J., concurs.
ANSTEAD, Justice, concurring and dissenting in part.
While I concur in the essential holding of the majority that our approval of the market share alternate theory of liability in Conley v. Boyle Drug Co., 570 So.2d 275 (Fla.1990), is not limited to the product involved in that case, i.e., the drug DES, I disagree in the "relinquishment of jurisdiction" by which this Court will, in essence, attempt to micro-manage this particular case. Having determined that there has not been an adequate case made for the proper entry of a summary judgment against the claimant, we should direct that this case be returned to the trial court for further appropriate proceedings.
We are taking a dangerous step, in terms of precedent, in going beyond the resolution of the policy issue involved, i.e., whether the market share theory may be applied to other products, and, instead, directing and supervising the step-by-step resolution of this particular tort case. Our role is to decide the larger policy issue, not to oversee the process of a particular case. It should not go unnoticed that the majority has cited no precedent for this novel step.
SHAW, J., concurs.

ORDER
Petitioner and Respondent having filed joint notice of dismissal pursuant to Florida Rule of Appellate Procedure 9.350(b), it is ordered that the petition for review be and the same is hereby dismissed.
NOTES
[1] Infection with the HIV virus often leads to the development of AIDS.
[2] This action sounds only in negligence.
[3] The contamination of this type of blood product in the early 1980s is a significant public policy issue not only in this state and country, but also in Canada. In the early 1990s, the Canadian federal government appointed a commission led by Justice Horace Krever to examine the events surrounding the contamination of Canada's blood supply. The Krever Commission released its final report in November, 1997.
[4] See Art. I, § 21, Fla. Const.
[5] Filed by the Florida Defense Lawyers Association and the Pharmaceutical Research and Manufacturers of America.