1999 ND 236

**Rochelle M. BLACK, individually, as surviving spouse, and on behalf of the Estate of Markus Hugh Black, deceased, Plaintiff and Appellant,**

v.

**ABEX CORPORATION, a Delaware Corporation (formerly known as American Brake Shoe & Foundry Co. and American Brake Shoe Co.), et al., Defendants,**

**Allied–Signal, Inc., a Delaware corporation, (individually and as successor-in-interest to Bendix Corp.); Borg–Warner Corporation, a Delaware corporation; The Chrysler Corporation, a Delaware corporation, (individually and as successor-in-interest to American Motors Corp.); and General Motors Corporation, a Delaware corporation, Defendants and Appellees.**

No. 990148.

Supreme Court of North Dakota.

Dec. 22, 1999.

David C. Thompson (argued), Rebecca Heigaard McGurran (appearance), and Brad Kolling (appearance, third year law student), David C. Thompson, P.C., Grand Forks, N.D., for plaintiff and appellant.

David E. Reich (argued), Pearce & Durick, Bismarck, N.D.; Steven L. Latham (appearance), Wheeler Wolf, Bismarck, N.D.; and Joel A. Flom (appearance), Jeffries, Olson, Flom & Bullis, P.A., Moorhead, MN, for defendants and appellees.

Ronald H. McLean and Jane L. Dynes, Serkland, Lundberg, Erickson, Marcil & McLean, Ltd., Fargo, N.D., for amicus curiae. Submitted on brief.

KAPSNER, Justice.

[¶ 1] Rochelle Black appeals from a summary judgment dismissing her wrongful death and survival claims premised upon market share or alternative liability against numerous asbestos manufacturers. Concluding Black has failed to raise a genuine issue of material fact which would preclude summary judgment, we affirm.

I

[¶ 2] Rochelle Black's husband, Markus, served in the Air Force as an auto mechanic from 1971 to 1986. He died of lung cancer in 1991. Black sued forty-eight asbestos manufacturers, alleging her husband's death had been caused by his occupational exposure to asbestos-containing products. Included in her complaint were claims based upon market share and alternative liability.

[¶ 3] The defendants moved for partial summary judgment requesting dismissal of the market share and alternative liability claims. The court granted the motion for partial summary judgment and dismissed those claims in its Pretrial Order dated August 29, 1995.

[¶ 4] Subsequently, all remaining claims against the defendants were either settled or voluntarily dismissed prior to the scheduled trial. On February 25, 1999, the court entered a "Concluding Order" covering this and several other consolidated asbestos cases, indicating all of the cases had been "fully and finally disposed of and the time for all appeals of this Court's orders and judgments in those cases has run." Black filed a notice of appeal from the Concluding Order and from the 1995 Pretrial Order granting the motion for summary judgment.[1]

II

[¶ 5] The defendants assert the appeal should be dismissed because Black waived her right to appeal. They assert Black, through counsel, agreed to the terms of the Concluding Order, which provided that the time for all appeals had run.

[¶ 6] There is no evidence in this record demonstrating Black or her counsel specifically agreed to the terms of the Concluding Order, including the erroneous pronouncement that the time for all appeals had run. Nor do the defendants cite any authority suggesting a trial court can preclude an appeal merely by inserting such language in its final order or judgment.

[¶ 7] The court never certified its dismissal of the market share and alternative liability claims as final under N.D.R.Civ.P. 54(b). Accordingly, the dismissal remained subject to revision and was not final until all claims against all parties were finally resolved by the February 1999

1. Black has settled with or dismissed all claims against forty-four of the defendants. The only defendants remaining as appellees are Chrysler Corporation, General Motors Corporation, Borg Warner, and Allied Signal.

Concluding Order. *Hurt v. Freeland,* 1997 ND 194, ¶ 5, 569 N.W.2d 266. Black could not appeal until all claims were resolved. *Id.* The defendants concede the February 1999 Concluding Order constituted the final judgment in the case.

[¶ 8] We conclude the defendants have failed to establish waiver and the appeal is properly before us.

### III

[¶ 9] Black asserts the district court erred in dismissing her claims based upon market share liability. She argues market share liability is a viable tort theory under North Dakota law and its application is appropriate under the facts of this case.

### A

[¶ 10] The genesis of market share liability lies in the California Supreme Court's decision in *Sindell v. Abbott Laboratories,* 26 Cal.3d 588, 163 Cal.Rptr. 132, 607 P.2d 924 (1980). In *Sindell,* the court held that women who suffered injuries resulting from their mothers' ingestion of the drug DES during pregnancy could sue DES manufacturers, even though the plaintiffs could not identify the specific manufacturer of the DES each of their respective mothers had taken. The court fashioned a new form of liability which relaxed traditional causation requirements, allowing a plaintiff to recover upon showing that she could not identify the specific manufacturer of the DES which caused her injury, that the defendants produced DES from an identical formula, and that the defendants manufactured a "substantial share" of the DES the plaintiff's mother might have taken. *Id.* at 936–37. The court held each defendant would be liable for a proportionate share of the judgment based upon its share of the relevant market, unless it demonstrated it could not have made the product which caused the plaintiff's injury. *Id.* at 937.

[¶ 11] The essential elements of market share liability are summarized in W. Page Keeton et al., *Prosser and Keeton on the Law of Torts,* § 103, at 714 (5th ed.1984):

> The requirements for market-share liability seem to be: (1) injury or illness occasioned by a fungible product (identical-type product) made by all of the defendants joined in the lawsuit; (2) injury or illness due to a design hazard, with each having been found to have sold the same type product in a manner that made it unreasonably dangerous; (3) inability to identify the specific manufacturer of the product or products that brought about the plaintiff's injury or illness; and (4) joinder of enough of the manufacturers of the fungible or identical product to represent a substantial share of the market.

[¶ 12] The overwhelming majority of courts which have addressed the issue have held market share liability is inappropriate in cases alleging injury from exposure to asbestos. *See, e.g., Robertson v. Allied Signal, Inc.,* 914 F.2d 360, 380 (3d Cir.1990); *White v. Celotex Corp.,* 907 F.2d 104, 106 (9th Cir.1990); *Blackston v. Shook & Fletcher Insulation Co.,* 764 F.2d 1480, 1483 (11th Cir.1985); *In re Asbestos Litigation,* 509 A.2d 1116, 1118 (Del.Super.Ct.1986); *Celotex Corp. v. Copeland,* 471 So.2d 533, 537–39 (Fla.1985); *Leng v. Celotex Corp.,* 196 Ill.App.3d 647, 143 Ill. Dec. 533, 554 N.E.2d 468, 470–71 (1990); *Sholtis v. American Cyanamid Co.,* 238 N.J.Super. 8, 568 A.2d 1196, 1203–05 (App. Div.1989); *Goldman v. Johns–Manville Sales Corp.,* 33 Ohio St.3d 40, 514 N.E.2d 691, 700–01 (1987); *Case v. Fibreboard Corp.,* 743 P.2d 1062, 1064–67 (Okla.1987); *Goulding v. Celotex Corp.,* 772 S.W.2d 66, 70–71 (Tex.1989); *see also* Prosser, *supra,* at § 103; 1 Louis R. Frumer & Melvin I. Friedman, *Products Liability* § 3.06[5][h][vii] (1999); L. Joel Chastain, Note, *Market Share Liability and Asbestos Litigation: No Causation, No Cause,* 37 Mercer L.Rev. 1115, 1116–17, 1134–36 (1986); Frank J. Giliberti, *Emerging Trends for Products Liability: Market Share Liability, Its History and Future,*

15 Touro L.Rev. 719, 726–27 (1999); Andrew B. Nace, Note, *Market Share Liability: A Current Assessment of a Decade–Old Doctrine*, 44 Vand. L.Rev. 395, 414–15 (1991). The most oft-cited rationale is that asbestos is not a fungible product, as evidenced by the wide variety of asbestos-containing products, the varying types and amounts of asbestos in those products, and the varying degrees of risk posed by those products. *See White*, 907 F.2d at 106; *Blackston*, 764 F.2d at 1483; *Copeland*, 471 So.2d at 537–38; *Leng*, 143 Ill.Dec. 533, 554 N.E.2d at 470–71; *Goldman*, 514 N.E.2d at 700–01; *Case*, 743 P.2d at 1065–66; *Sholtis*, 568 A.2d at 1204 n. 10; Chastain, *supra*, 37 Mercer L.Rev. at 1138; Nace, *supra*, 44 Vand. L.Rev. at 415. The leading treatise recognizes:

> [I]t can reasonably be argued that it would not be appropriate to apply this fungible product concept to asbestos-containing products because they are by no means identical since they contain widely varying amounts of asbestos.

Prosser, *supra*, § 103, at 714.

[¶ 13] Black essentially concedes market share liability is inappropriate in a "shotgun" asbestos case, where the plaintiff is alleging injury from exposure to many different types of asbestos products. Black asserts, however, market share liability may be appropriate when the plaintiff seeks to hold liable only manufacturers of one type of asbestos-containing product. Relying upon *Wheeler v. Raybestos–Manhattan*, 8 Cal.App.4th 1152, 11 Cal.Rptr.2d 109 (1992), Black asserts she should be allowed to proceed in her market share claims against the manufacturers of asbestos-containing "friction products," including brake and clutch products. In *Wheeler*, the California Court of Appeal held a plaintiff could proceed on a market share theory against manufacturers of asbestos-containing brake pads. The court overturned the trial court's order granting a nonsuit in favor of the manufacturers, concluding the plaintiff's offer of proof sufficiently alleged that the brake pads,

although not identical, were "fungible" because they contained percentages of asbestos within a "restricted range" of between forty and sixty percent and posed nearly equivalent risks of harm. *Id.* at 111–12.

[¶ 14] Black requests that we recognize market share liability as a viable tort theory under North Dakota law. Black further requests that we follow *Wheeler* and hold that automotive "friction products," including asbestos-containing brake and clutch products, are sufficiently fungible to support a market share claim.

## B

[¶ 15] Before reaching the merits of Black's claims, we must resolve a conflict over the procedural posture of this case and the appropriate standard of review.

## 1

[¶ 16] Black asserts the defendants' motions, although titled motions for summary judgment, were in substance motions for judgment on the pleadings under N.D.R.Civ.P. 12(b)(v). Black thus asserts all factual allegations in her complaint must be taken as true and dismissal was appropriate only if there was no set of facts under which she was entitled to relief. *See, e.g., Perry Center, Inc. v. Heitkamp*, 1998 ND 78, ¶ 42, 576 N.W.2d 505.

[¶ 17] The defendants' motions are clearly titled motions for summary judgment, and specify they are based upon N.D.R.Civ.P. 56 and all of the files and records in the case. In their memoranda in support of the motions, the defendants specifically allege lack of evidence of fungibility of the products which Black claimed caused her husband's injury. Black asserts that, because the defendants failed to submit affidavits or citations to specific parts of the record to support their motions, the motions were not properly summary judgment motions under N.D.R.Civ.P. 56, but were motions for judgment on the pleadings under

N.D.R.Civ.P. 12(b)(v). She therefore asserts she had no duty to present evidence to support the allegations in her complaint.

■ [¶ 18] Black has misconstrued the showing required when a defendant moves for summary judgment seeking dismissal of claims. Our Rule 56 is virtually identical to the corresponding federal rule, and we will look to federal court interpretations of the federal rule as persuasive. *Continental Casualty Co. v. Kinsey,* 513 N.W.2d 66, 69 (N.D.1994); *Farmers Union Oil Co. v. Harp,* 462 N.W.2d 152, 154 (N.D.1990). In *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), the United States Supreme Court addressed the showing required to support a motion for summary judgment. In that case, a federal circuit court had held a defendant who failed to present evidence of a lack of a genuine issue of fact had failed to properly support its summary judgment motion, thereby relieving the plaintiff of the duty to present evidence demonstrating an issue of fact. The Supreme Court reversed, emphasizing the defendant is not required to present "evidence" of a lack of evidence to support the plaintiff's claim:

> Of course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. But unlike the Court of Appeals, we find no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim. On the contrary, Rule 56(c), which refers to "the affidavits, *if any* " (emphasis added), suggests the absence of such a requirement. And if there were any doubt about the meaning of Rule 56(c) in this regard, such doubt is clearly removed by

Rules 56(a) and (b), which provide that claimants and defendants, respectively, may move for summary judgment *"with or without supporting affidavits "* (emphasis added). The import of these subsections is that, regardless of whether the moving party accompanies its summary judgment motion with affidavits, the motion may, and should, be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied. One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and we think it should be interpreted in a way that allows it to accomplish this purpose.

Respondent argues, however, that Rule 56(e), by its terms, places on the nonmoving party the burden of coming forward with rebuttal affidavits, or other specified kinds of materials, only in response to a motion for summary judgment "made and supported as provided in this rule." According to respondent's argument, since petitioner did not "support" its motion with affidavits, summary judgment was improper in this case. But as we have already explained, a motion for summary judgment may be made pursuant to Rule 56 "with or without supporting affidavits." In cases like the instant one, where the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the "pleadings, depositions, answers to interrogatories, and admissions on file." Such a motion, whether or not accompanied by affidavits, will be "made and supported as provided in this rule," and Rule 56(e) therefore requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial."

. . . .

The Court of Appeals in this case felt itself constrained, however, by language in our decision in *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). . . . In the course of its opinion, the *Adickes* Court said that "both the commentary on and the background of the 1963 amendment conclusively show that it was not intended to modify the burden of the moving party . . . to show initially the absence of a genuine issue concerning any material fact." *Id.*, at 159 [90 S.Ct. 1598]. . . . But we do not think the *Adickes* language quoted above should be construed to mean that the burden is on the party moving for summary judgment to produce evidence showing the absence of a genuine issue of material fact, even with respect to an issue on which the non-moving party bears the burden of proof. Instead, as we have explained, the burden on the moving party may be discharged by "showing"—that is, pointing out to the district court—that there is an absence of evidence to support the non-moving party's case.

*Celotex*, 477 U.S. at 323–25, 106 S.Ct. 2548 (footnote omitted).

[¶ 19] The Supreme Court's holding is a recognition of the difficulty of proving a negative. If the record, after discovery, contains no evidence to support an essential element of the plaintiff's claim, there is no "evidence" the defendant can point to in support of its assertion there is no such evidence. In such a case the rule allows the defendant to put the plaintiff to its proof, without the necessity of a full trial, by merely "pointing out" to the trial court the absence of evidence to support the plaintiff's case. *Id.* at 325, 106 S.Ct. 2548; see *Daubert v. Merrell Dow Pharmaceuti-*

*cals, Inc.*, 43 F.3d 1311, 1315 (9th Cir. 1995); 11 James Wm. Moore et al., *Moore's Federal Practice* ¶ 56.13[1] (3d ed.1999).

[¶ 20] This result finds support in the policy underpinnings of N.D.R.Civ.P. 56. We have often stated N.D.R.Civ.P. 56 is a procedural device allowing the prompt and expeditious disposition of a controversy without a trial if either party is entitled to judgment as a matter of law, if no dispute exists as to the material facts, or if resolving disputed facts would not alter the result. *E.g.*, *Ennis v. City of Ray*, 1999 ND 104, ¶ 5, 595 N.W.2d 305. That policy is best served by allowing the defendant to put the plaintiff to its proof when the record contains no evidence on an essential element of the plaintiff's claim.

[¶ 21] Black asserts a different result is required by *Zueger v. Carlson*, 542 N.W.2d 92, 94 (N.D.1996), in which we said "[t]he degree of response required of a party opposing a motion for summary judgment is set by the scope of the motion." Black asserts that, like the plaintiff in *Zueger*, she "was not required to present evidence supporting the underlying factual allegations of her claims." *Id.* at 94–95. In *Zueger*, however, the defendant raised purely legal issues in its summary judgment motion, and did not challenge the factual basis for the plaintiffs' claims. By contrast, in this case the defendants have specifically raised the lack of evidence of fungibility, which is an essential element of Black's market share claims.

[¶ 22] We conclude the motions were properly presented and disposed of as summary judgment motions, and we will apply the relevant standards of review for summary judgment.[2]

---

2. Even if the defendants' motions as originally filed were construed to be N.D.R.Civ.P. 12(b)(v) motions for judgment on the pleadings, they were converted to summary judgment motions when Black submitted with her response evidentiary materials beyond the pleadings. Black submitted portions of a doctor's deposition testimony and documentary evidence in opposition to the motions. That evidence was not excluded by the district court. If, on a motion to dismiss on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion should be treated as one for sum-

2

[¶ 23] Summary judgment is a procedural device for promptly and expeditiously disposing of a controversy without a trial if there is no genuine issue of material fact, or if the law is such that resolution of the factual disputes will not alter the result. *Strom–Sell v. Council for Concerned Citizens, Inc.*, 1999 ND 132, ¶ 16, 597 N.W.2d 414. In considering a motion for summary judgment, the court may examine the pleadings, depositions, admissions, affidavits, interrogatories, and inferences to be drawn from that evidence to determine whether summary judgment is appropriate. *Swenson v. Raumin*, 1998 ND 150, ¶ 9, 583 N.W.2d 102. Although the party seeking summary judgment bears the initial burden of showing there is no genuine issue of material fact, the party opposing the motion may not simply rely upon the pleadings, but must present competent admissible evidence which raises an issue of material fact. *Peterson v. Zerr*, 477 N.W.2d 230, 234 (N.D.1991). Summary judgment is appropriate against a party who fails to establish the existence of a factual dispute on an essential element of her claim and on which she will bear the burden of proof at trial. *Strom–Sell*, at ¶ 16.

[¶ 24] Black would have the burden of proof at trial on all elements of her market share liability claim, including the burden of proving fungibility of the defendants' products which she claims caused her husband's injuries. Thus, if the evidence in the record did not establish a genuine issue of material fact on fungibility, summary judgment was appropriate.

C

[¶ 25] This Court has never addressed whether market share liability is recognized under North Dakota tort law. Other courts faced with the question have reached varying conclusions on the general

availability of this novel remedy. *See* 1 Louis R. Frumer & Melvin I. Friedman, *Products Liability* § 3.06[5] (1999); Richard E. Kaye, Annotation, *"Concert of Activity," "Alternate Liability," "Enterprise Liability," or Similar Theory as Basis for Imposing Liability Upon One or More Manufacturers of Defective Uniform Product, in Absence of Identification of Manufacturer or Precise Unit or Batch Causing Injury*, 63 A.L.R.5th 195 at § 4 (1998), and cases collected therein. We find it unnecessary to resolve this general issue because we conclude, assuming market share liability were recognized in this state, summary judgment was still appropriate based upon the record in this case.

[¶ 26] The dispositive question presented is whether Black has raised a genuine issue of material fact on the issue of fungibility. Market share liability is premised upon the fact that the defendants have produced identical (or virtually identical) defective products which carry equivalent risks of harm. Accordingly, under the market share theory, it is considered equitable to apportion liability based upon the percentage of products each defendant contributed to the entire relevant market.

[¶ 27] This reasoning hinges, however, upon each defendant's product carrying an equal degree of risk. As the Supreme Court of Oklahoma explained in *Case*, 743 P.2d at 1066:

In the *Sindell* case, and those following it, it was determined that public policy considerations supporting recovery in favor of an innocent plaintiff against negligent defendants would allow the application of a theory of liability which shifted the burden of proof of causation from plaintiff to defendants. However, as previously stated, that theory was crafted in a situation where each potential defendant shared responsibility for producing a product which

mary judgment and disposed of in accordance with N.D.R.Civ.P. 56. *Opp v. Source One Management, Inc.*, 1999 ND 52, ¶ 10, 591 N.W.2d 101; *Livingood v. Meece*, 477 N.W.2d 183, 187 (N.D.1991).

carried with it a singular risk factor. The theory further provided that each potential defendant's liability would be proportional to that defendant's contribution of risk to the market in which the plaintiff was injured. This situation thus provided a balance between the rights of the defendants and the rights of the plaintiffs. A balance being achieved, public policy considerations were sufficient to justify the application of the market share theory of liability. Similar reasoning was employed by the Supreme Court of Ohio in *Goldman*, 514 N.E.2d at 701:

> Crucial to the *Sindell* court's reasoning was this fact: there was no difference between the risks associated with the drug as marketed by one company or another, and as all DES sold presented the same risk of harm, there was no inherent unfairness in holding the companies accountable based on their share of the DES market.

Numerous other courts have stressed the importance of a singular risk factor in market share cases. *See, e.g., King v. Cutter Laboratories*, 714 So.2d 351, 354–55 (Fla.1998); *Leng*, 143 Ill.Dec. 533, 554 N.E.2d at 471; *Becker v. Baron Bros.*, 138 N.J. 145, 649 A.2d 613, 620–21 (1994).

[¶ 28] Unless the plaintiff can demonstrate that the defendants' products created a "singular risk factor," the balance between the rights of plaintiffs and defendants evaporates and it is no longer fair nor equitable to base liability upon each defendant's share of the relevant market. The rationale underlying market share liability, as developed in *Sindell*, is that it did not matter which manufacturer's product the plaintiff's mother actually ingested; because all DES was chemically identical, the same harm would have occurred. Thus, any individual manufacturer's product would have caused the identical injury, and it was through mere fortuity that any one manufacturer did not produce the actual product ingested. Under these cir-

cumstances, viewing the overall DES market and all injuries caused thereby, it may be presumed each manufacturer's products will produce a percentage of those injuries roughly equivalent to its percentage of the total DES market. As the *Sindell* court recognized, "[u]nder this approach, each manufacturer's liability would approximate its responsibility for the injuries caused by its own products." *Sindell*, 163 Cal.Rptr. 132, 607 P.2d at 937.

[¶ 29] In order to prevail on its market share claims, Black would therefore have to demonstrate that the asbestos-containing "friction products" her husband was exposed to carried equivalent degrees of risk. Black asserts this problem has been "disposed of" by the holding in *Wheeler*. Although *Wheeler* recognized that non-identical products may give rise to market share liability if they contain roughly equivalent quantities of a single type of asbestos fiber, the court did not hold that all asbestos-containing friction brake products in all cases will be considered fungible. In fact, the court in *Wheeler* indicated that such products must carry a nearly equivalent risk of harm to support market share liability. *Wheeler*, 11 Cal.Rptr.2d at 111–12. Furthermore, *Wheeler* was a reversal of a nonsuit based upon an offer of proof made by the plaintiff. The court stressed its holding was narrow: the plaintiffs had not proven the elements of a market share case, but were merely being afforded the opportunity to prove it. *Id.* at 113. Clearly, *Wheeler* does not serve as evidence of fungibility and equivalent risks of harm of the products in this case.

[¶ 30] Black points to uncontroverted evidence in this record that the four remaining defendants produced friction products which contained between seven and seventy-five percent asbestos fibers. This is a far greater range than the forty to sixty percent the *Wheeler* court considered "roughly comparable" for purposes of fungibility under *Sindell*.[3] *Wheeler*, 11 Cal.

---

**3.** We also note the holding in *Wheeler* was    limited to asbestos-containing brake pads.

Rptr.2d at 111. It is closer to the fifteen to one-hundred percent range which the Supreme Court of Ohio held precluded market share liability as a matter of law. *See Goldman,* 514 N.E.2d at 697, 701. It seems obvious that a product which contains seventy-five percent asbestos would create a greater risk of harm than one which contains only seven percent. *See, e.g., Leng,* 143 Ill.Dec. 533, 554 N.E.2d at 471 (toxicity of an asbestos product varies with percentage of asbestos fiber, and "products with high concentrations of asbestos fibers have a correspondingly high potential for inducing disease"). Absent introduction of expert evidence demonstrating that in spite of the differences the products would produce equivalent risks of harm, application of market share liability would be inappropriate.

[¶ 31] Black failed to present competent, admissible evidence from which a fact finder could determine the "friction products" her husband was exposed to carried equivalent risks of harm and were fungible under *Sindell.* Accordingly, summary judgment was appropriate.

### IV

[¶ 32] Black asserts the district court erred in dismissing her claims based upon alternative liability.

■ [¶ 33] Alternative liability was first recognized by the Supreme Court of California in *Summers v. Tice,* 33 Cal.2d 80, 199 P.2d 1 (1948). In *Summers,* the plaintiff was struck by a shot fired by one of the defendants, who had simultaneously fired at a quail near the plaintiff. When the plaintiff could not prove which of the two negligently fired shots had struck him, the court shifted the burden of proving causation to the defendants. *Id.* at 3–4; *see also* W. Page Keeton et al., *Prosser and Keeton on the Law of Torts,* § 41 (5th ed.1984). The rule of *Summers* has been

adopted in the Restatement (Second) of Torts § 433B(3):

> Where the conduct of two or more actors is tortious, and it is proved that harm has been caused to the plaintiff by only one of them, but there is uncertainty as to which one has caused it, the burden is upon each such actor to prove that he has not caused the harm.

[¶ 34] This Court has not previously addressed whether alternative liability, as embodied in *Summers* and Section 433B(3), is recognized under North Dakota law. Courts addressing the issue have reached varying results. *See* Richard E. Kaye, Annotation, *"Concert of Activity," "Alternate Liability," "Enterprise Liability," or Similar Theory as Basis for Imposing Liability Upon One or More Manufacturers of Defective Uniform Product, In Absence of Identification of Manufacturer of Precise Unit or Batch Causing Injury,* 63 A.L.R.5th 195 at § 3 (1998), and cases collected therein. We find it unnecessary to resolve this general issue because we conclude, assuming alternative liability were recognized in this state, summary judgment was appropriate under the facts of this case.

■ [¶ 35] As recognized by the Supreme Court of Texas in *Gaulding v. Celotex Corp.,* 772 S.W.2d 66, 69 (Tex.1989), "[a] crucial element to alternative liability is that *all* possible wrongdoers must be brought before the court." Thus, most courts addressing the issue have rejected application of alternative liability in asbestos cases. *See, e.g., Vigiolto v. Johns–Manville Corp.,* 643 F.Supp. 1454, 1457 (W.D.Pa.1986); *Rutherford v. Owens–Illinois, Inc.,* 16 Cal.4th 953, 67 Cal.Rptr.2d 16, 941 P.2d 1203, 1216–21 (1997); *Goldman v. Johns–Manville Sales Corp.,* 33 Ohio St.3d 40, 514 N.E.2d 691, 696–99 (1987); *Gaulding,* 772 S.W.2d at 68–69.

Black seeks to include a broader range of products—brake and clutch "friction products"—in her market share claims. Black has not drawn our attention to any evidence in this record demonstrating how, or if, the different nature and function of brake and clutch products affects their relative degree of risk.

As the court explained in *Lineaweaver v. Plant Insulation Co.,* 31 Cal.App.4th 1409, 37 Cal.Rptr.2d 902, 907 (1995) (quoted in *Rutherford,* 67 Cal.Rptr.2d 16, 941 P.2d at 1220–21):

> Unlike *Summers,* there are hundreds of possible tortfeasors among the multitude of asbestos suppliers. As our Supreme Court has recognized, the probability that any one defendant is responsible for plaintiff's injury decreases with an increase in the number of possible tortfeasors. When there are hundreds of suppliers of an injury-producing product, the probability that any of a handful of joined defendants is responsible for plaintiff's injury becomes so remote that it is unfair to require defendants to exonerate themselves. The probability that an individual asbestos supplier is responsible for plaintiff's injury may also be decreased by the nature of the particular product. Asbestos products have widely divergent toxicities. Unlike the negligent hunters of *Summers,* all asbestos suppliers did not fire the same shot. Yet, under a burden shifting rule, all suppliers would be treated as if they subjected plaintiff to a hazard identical to that posed by other asbestos products. [Citations omitted].

[¶ 36] Black does not assert she has included as defendants all possible manufacturers of the asbestos-containing brake and clutch "friction products" which her husband was exposed to during his lengthy career as a mechanic. Accordingly, alternative liability is inapplicable in this case.

## V

[¶ 37] The summary judgment dismissal of Black's market share and alternative liability claims is affirmed.

[¶ 38] GERALD W. VANDE WALLE, C.J., DALE V. SANDSTROM, WILLIAM A. NEUMANN, MARY MUEHLEN MARING, JJ., concur.